[S. F. No. 9470. In Bank.—July 26, 1921.]

E. W. BURR, as Executor, etc., Appellant, v. CITY AND COUNTY OF SAN FRANCISCO, Respondent.

[1] MUNICIPAL CORPORATIONS—SAN FRANCISCO—SUSPENSION OF DOLLAR LIMIT OF TAXATION—WHEN AUTHORIZED—CHARTER.—The provision of section 13, chapter 1, of article III of the charter of the city

"Emergency" which will authorize an extra tax, note, 52 L. R. A. (N. S.) 676.

and county of San Francisco empowering the board of supervisors in case of any great necessity or emergency to temporarily suspend the limitation of the annual tax rate to one dollar on each one hundred dollars of the assessed valuation of property, does not authorize a tax exceeding the dollar limit whenever the board of supervisors shall by ordinance declare that a great necessity or emergency exists, but authorizes such increased tax only when a great necessity or emergency does, in fact, exist.

[2] ID. — ORDINANCE SUSPENDING TAX LIMITATION — FACTS SHOWING EXISTENCE OF GREAT NECESSITY OR EMERGENCY—RECITAL NOT CONCLUSIVE.—The recital, in an ordinance of the board of supervisors of the city and county of San Francisco suspending the dollar limit of taxation, of facts showing the existence of a great necessity or emergency is not conclusive of the truth of the recital, or of the existence of such facts.

[3] ID.—DECLARATION OF EXISTENCE OF GREAT NECESSITY OR EMERGENCY—RECITAL NOT CONCLUSIVE—RIGHT OF TAXPAYER—REVIEW BY COURTS.—The conclusion or declaration of the board of supervisors of the city and county of San Francisco, in an ordinance suspending the dollar limit of taxation, that a great necessity or emergency exists because of the facts recited, is not conclusive, and both the existence of the recited facts and the conclusion drawn therefrom may be disputed by a taxpayer, and, on review by the courts, held to be nonexistent, or unwarrantable, respectively.

[4] ID.—INCREASED EXPENSES FOR MAINTENANCE OF CITY GOVERNMENT —INSUFFICIENT SHOWING OF GREAT NECESSITY OR EMERGENCY.— An ordinance of the board of supervisors of the city and county of San Francisco declaring that a great necessity and emergency existed which required that the limitation of taxation contained in section 11 of chapter 1 of article III of the charter be temporarily suspended by reason of recited facts which taken together showed that the performance of the ordinary functions of the city government for the fiscal year required the expenditure of a larger amount of money than could have been raised by a tax rate of one dollar on the hundred, was insufficient to show the existence of a great necessity or emergency within the meaning of section 13 of chapter 1 of article III of the charter.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. James M. Troutt, Judge. Reversed.

The facts are stated in the opinion of the court.

Drown, Leicester & Drown for Appellant.

George Lull, City Attorney, and Maurice T. Dooling, Jr., Assistant City Attorney, for Respondent.

SHAW, J.—In the court below judgment was given in favor of the defendant, from which the plaintiff appeals.

The object of the plaintiff's action was to recover of the city and county of San Francisco the sum of $462.60, paid as taxes upon the property of the plaintiff's testator for the year 1914 under protest, which tax, it is alleged, was unlawfully levied by the city, in violation of the provisions of section 11, chapter 1, of article III of the city charter, limiting the annual tax rate to one dollar on each one hundred dollars of the assessed valuation of property.

Section 11 aforesaid provides that, exclusive of certain special taxes, the tax levy for any year "shall not exceed the rate of one dollar to each one hundred dollars valuation of the property assessed." This provision is qualified by a provision of section 13 of the same chapter, which at the time of the said tax levy read as follows:

"The limitation in section eleven of this charter upon the rate of taxation shall not apply in case of any great necessity or emergency. In such case the limitation may be temporarily suspended so as to enable the supervisors to provide for such necessity or emergency. No increase shall be made in the rate of taxation authorized to be levied in any fiscal year, unless such increase be authorized by ordinance passed by the unanimous vote of the supervisors and approved by the mayor. The character of such necessity or emergency shall be recited in the ordinance authorizing such action, and be entered in the journal of the board." (Stats. 1899, p. 261.)

The levy in question was made under an ordinance adopted by the supervisors of the city on June 29, 1914, for the purpose of meeting the requirements of the aforesaid provision of section 13 regarding taxation in the case of great necessity or emergency. The recital of the facts showing the great necessity and emergency in the ordinance was as follows:

"Section 1. It is hereby recited, determined and declared that a great necessity and emergency exists within the city and county of San Francisco, which requires that the limitation of taxation contained in Section 11 of Chapter 1, of Article III of the charter of said city and county, be temporarily suspended, and that the character of such necessity and emergency is as follows, to wit:

"That on the 18th day of April, 1906, and days follow-ing, a fire destroyed a vast amount of the taxable property within the City of the approximate value of $150,000,000.00.

"That the assessment roll for the year 1905–06 aggregated $525,000,000.00; that the value of taxable property, shown by the last assessment roll was but slightly in excess of that sum and the estimated value of taxable property for the ensuing fiscal year will not exceed $540,000,000.00; that said fire checked the normal increase of said assessment roll, and its restoration to the former amount has been ex-tremely slow and difficult and at a less ratio than has been the increase of necessary governmental expenses; that in addition to the loss of taxable property aforesaid the adop-tion of Senate Constitutional Amendment No. 1 by the voters on November 8, 1910, still further reduced the amount of taxable property of said city and county by approxi-mately $97,000,000.00, and at the same time deprived the City of certain license tax revenues amounting to a large sum; furthermore, by amendments made to the charter in 1907, the salaries in the police and fire departments were increased by the amount of more than $1,000,000.00; also that by Charter amendment adopted November 15, 1910, additional expenses were added to the expenses of the city in the aggregate of approximately $100,000.00; that at the several sessions of the legislature since 1905, including the session of 1913, large additional expenses and financial burdens were laid upon the county of San Francisco, including the expenditures on account of the so-called 'mothers' pension act,' the so-called 'employers' compensa-tion act' and 'tenement house act,' which expenses and burdens could not be anticipated and provided for under the provisions of the charter of said city and county when adopted in 1898; that furthermore, the legislature by various enactments, has materially reduced the sums heretofore re-ceived by the state in support of the public school system, which reductions could not be foreseen and provided for at the time of the adoption of said charter; that industrial, financial and economic conditions existing throughout the country have resulted in a rapid advance in the prices of commodities and of labor and such advance has been propor-tionately greater than the value of property subject to tax-ation; that the necessity of meeting such advanced costs

is urgent and imperative and is beyond the power of the city and county and its officers to control; that the city and county of San Francisco faces a certain and unexpected shortage of funds, and that it will be impossible to conduct the government of the city and county and meet its essential expenses unless the limitations prescribed in Chapter 1 of Article III of the charter be temporarily suspended.

"That the demand due to the rapid growth of the city, particularly in new districts of the city and county, developed as a result of shifting of population caused by the fire aforesaid, for additional public institutions, services and necessities have been great, which demands and necessities could not be reasonably foreseen; that the revenue of the city and county from licenses has decreased by approximately the sum of $250,000.00 since 1908–09.

"That the estimated and necessary expenditures of the city and county of San Francisco for the fiscal year ending June 30, 1915, will be $14,900,000, of which sum approximately $3,600,000 must be raised in excess of the limitation contained in the charter.

"That a great necessity or emergency exists for the suspension of the limitation in Section 11 of Chapter 1 of Article III upon the rate of taxation, because of the inadequacy of a tax of $1.00 on each $100.00 upon the assessed valuation of property in the city and county of San Francisco arising from the conditions, acts, happenings and things above recited, and such limitation is hereby suspended for the purpose of providing for such emergency and necessity."

Section 2 of the ordinance declared that a tax was levied of sixty-six and four-tenths cents upon each one hundred dollars of assessed valuation of property within the city and that said tax should be "an increase of and an addition to the rate of one dollar taxation on each one hundred dollars of assessed valuation" and "an addition to and increase of all taxes of every amount and kind authorized to be levied under and by virtue" of section 11 aforesaid.

The claim of the plaintiff is that the recitals of facts set forth in this ordinance to show a great necessity or emergency are insufficient for that purpose and do not come within the meaning and effect of the aforesaid section 13, and, consequently, that the increase in the tax rate made by

said ordinance is wholly void. This presents the only question for consideration in the case.

[1] At the outset it is to be noted that section 13 aforesaid does not authorize a tax exceeding the dollar limit *whenever the board of supervisors shall by ordinance declare* that a great necessity or emergency exists, but that it authorizes such increased tax only "in case of any great necessity or emergency," that is, when a great necessity or emergency does, in fact, then exist. [2] The consequence is that the recital of facts in the ordinance to show such necessity or emergency is not conclusive of the truth of the recital or of the existence of such facts. This was expressly decided in *San Christina etc. Co.* v. *San Francisco,* 167 Cal. 772, [52 L. R. A. (N. S.) 676, 141 Pac. 384]. [3] It must follow, also, that the conclusion or declaration of the board that the great necessity or emergency did exist because of the facts recited is not conclusive. Both the existence of the recited facts and the conclusion drawn therefrom may be disputed by the taxpayer and, on review by the courts, held to be nonexistent, or unwarrantable, respectively.

In the above-cited case, the San Francisco tax levy of 1910 in excess of the dollar limit was attacked. The ordinance levying that tax declared that a great necessity and emergency existed in 1910, because of the destruction of and damage to public property, buildings, streets, and sewers by the great fire and earthquake in April, 1906, which the city had found it impossible to reconstruct, replace, or repair in the meantime out of its revenues appropriated to that purpose and because of danger that the bubonic plague prevalent in 1907 ·might recur and the necessity of provision to prevent such recurrence. This was held to be insufficient to constitute a "great necessity or emergency" existing in 1910. The court there said: "It was not in contemplation that the supervisors could foster and nurse such emergency so as to spread their taxing power over an indeterminate number of years. As little was it designed that under the head of emergency or necessity should be imposed taxes not bearing forcefully and directly on the relief, cure or prevention of the emergency or necessity." Also that where such a tax ordinance is attacked, the "court will scrutinize the items presented; first, to determine whether or not the great emergency or necessity, within

186 Cal.—33

the meaning of the charter, existed at the time of the levy, and, second, whether if it be found that such emergency or necessity did in fact exist, any of the items in the levy do not fairly come within the purport and scope of such emergency levy.'' It necessarily follows that a great necessity or emergency requiring the raising of money to rebuild a city hall, for example, would not uphold an additional tax to raise money to repair streets and sewers or to rebuild a county hospital. Webster's definition of the word ''emergency'' as ''an unforeseen combination of circumstances which calls for an immediate action or remedy; pressing necessity, exigency,'' is approved and followed in that opinion, and the phrase ''great necessity or emergency'' is treated on the theory that the adjective ''great'' applies to both words. (See, also, *People* v. *Lee Wah,* 71 Cal. 80, [11 Pac. 851].)

Counsel for the city virtually concede that no one of the particular facts recited in the ordinance is of itself sufficient to show either a great necessity or a great emergency. They rest their case on the proposition that the facts recited, taken together, show that the performance of the ordinary functions of the city government for the fiscal year 1914-15 required the expenditure of a larger amount of money than could have been raised by a tax rate of one dollar on the hundred, and that this constitutes a sufficient ''great necessity'' to come within the meaning of the charter provision in question. They say, ''if it will be admitted by counsel for appellant that in every municipality there is a minimum of expenditures which must necessarily be made if the municipality is to serve its normal and essential functions, then it seems impossible to escape the conclusion that if for some reason the value of the taxable property decrease, or the necessary expenditures increase, or both, that there exists a great necessity—indeed, an overpowering one—for increasing the rate of taxation.'' With respect to the particular case they proceed to say:

''It will serve no useful purpose to go in detail into the various facts recited in the ordinance which show (1) a decrease in income and (2) an increase in necessary expenditures. If we are correct in our contention that when the city and county cannot perform all of its necessary functions within the dollar limit a great necessity exists for its

suspension, it follows that the facts recited which have
brought about this state of affairs are not themselves great
necessities or emergencies. They are only the various con-
tributing factors which taken all together and viewed as a
whole have made it impossible for the city properly to per-
form all its duties within the dollar limit. The great neces-
sity lies in the fact that the city can no longer properly
function within the dollar limit. The contributing facts
recited in the ordinance simply characterize this great neces-
sity."

[4]  Their claim, in effect, is that the final recital of the
ordinance to the effect that the estimated expenditures of
the city for the year ending June 30, 1915, will be four-
teen million nine hundred thousand dollars, "of which sum
approximately three million six hundred thousand dollars
must be raised in excess of the limitation contained in the
charter," is alone sufficient to show the great necessity for
the increased tax, and that the preceding recitals are mere
evidentiary facts which establish the ultimate fact.

If this is the meaning of section 13, then it practically
destroys the dollar limit. If the growth of the city, or
changes in the charter, or in the state law, or the entering
upon new activities by the city government, or other changes
which are always to be expected in a growing community,
require the creation of new offices, bureaus, or commissions
and the hiring of more employees and result in large addi-
tions to the regular yearly running expenses of the city,
and there is no corresponding increase in the tax valuation,
and these things are sufficient to create the "great neces-
sity" in mind when the charter was adopted in 1899, then,
of course, they will continue to operate every year and the
dollar limit ceases to exist. It reduces the meaning of the
charter provisions on the subject to a mere statement that
such tax shall not exceed the dollar rate, except in cases
where that rate will not raise the expenses of the city, in
which event the rate will be unlimited. The charter may
as well have provided that such taxes should not exceed
the dollar limit, unless a higher rate was necessary to raise
the money required to pay the regular annual expenses
of the city. The *temporary* suspension authorized to "en-
able the supervisors to provide for such necessity or emer-
gency" would immediately become regular and permanent.

The restriction to the dollar limit, which was intended to compel reasonable economy, would have no effect of that kind whatever. All that the supervisors need do to circumvent the provision would be to create a necessity by their own extravagance or by engaging in new municipal activities and enterprises, benevolent or otherwise, and the power to levy the increased rate would automatically follow.

We think the charter-makers did not intend that the dollar limit should be so ineffectual and useless. We can perceive no essential difference between the conditions shown by the ordinance aforesaid and those shown by the ordinance under consideration in *San Christina* v. *San Francisco, supra,* which also declared that the facts recited constituted a "great necessity and emergency," as does the present one, and which the court held insufficient to show either. The ordinance, in this view of the case, amounts simply to a statement that the expenses of the city have increased to such an extent that they cannot be kept up without exceeding the dollar limit. This, in our opinion, does not come within the letter or spirit of the term "great necessity or emergency."

It may be observed that the city authorities themselves seem to have been somewhat doubtful on the subject, for early in the year 1915 the supervisors proposed an amendment of section 13 aforesaid to the voters and called an election at which it was adopted, whereby nearly all the matters stated in the ordinance were excepted from the operation of the dollar limit of section 11, and it is no longer of much practical effect.

It follows from what we have said that the court below erred in holding that a great necessity or emergency was shown by the tax ordinance.

The judgment is reversed.

Angellotti, C. J., Shurtleff, J., Sloane, J., Lawlor, J., and Lennon, J., concurred.

Rehearing denied.

All the Justices concurred, except Angellotti, C. J., who was absent.