[Civ. No. 37812. First Dist., Div. Four. Nov. 29, 1976.]

OAKLAND RAIDERS, Plaintiff and Respondent, v.
CITY OF BERKELEY, Defendant and Appellant.

624

**COUNSEL**

Lois L. Johnson, City Attorney, Susan Watkins and Michael Lawson, Assistant City Attorneys, for Defendant and Appellant.

Hardin, Cook, Loper, Engel & Bergez and Ralph A. Lombardi for Plaintiff and Respondent.

**OPINION**

**CHRISTIAN, J.**—The City of Berkeley appeals from a summary judgment, obtained by respondent Oakland Raiders, enjoining appellant from collecting a tax imposed by the city's Ordinance No. 4703-N.S. We reverse the judgment.

On June 30, 1972, respondent and the Regents of the University of California entered into a stadium rental agreement by which respondent leased the use of California Memorial Stadium at the University of California, Berkeley, for several professional football games to be played during the years 1972, 1973, and 1974.

On July 9, 1974, appellant adopted Ordinance No. 4703-N.S. ("Professional Sports Events License Tax") to amend Ordinance No. 2805-N.S.

("Business License Tax"). Ordinance No. 4703-N.S. provided that "professional sports events" would be subject to an annual license tax of 10 percent of gross receipts. The ordinance was passed as an urgency measure, for the purpose of making it immediately effective. The preexisting business license tax ordinance (No. 2805-N.S.) imposed on all businesses in the City of Berkeley a tax to be determined variously by the number of employees, the gross receipts of the business, or by some flat rate. Where the license tax was calculated by reference to gross receipts, the tax rate was established as .4 percent of gross receipts; the only exception to this provision in Ordinance No. 2805-N.S. was established by the ordinance here under review, with application only to professional sporting events.

Respondent asserts that the new ordinance[1] is a regulatory rather than a revenue-raising measure and that, as applied, it is an improper regulation of the property held in public trust by the Regents of the University of California. A city is permitted to make local ordinances and regulations which are not in conflict with general laws. (Cal. Const., art. XI, § 7.) ■ However, a city may not enact ordinances which conflict with general laws on statewide matters (*Hall* v. *City of Taft* (1956) 47 Cal.2d 177, 184 [302 P.2d 574]); the Regents of the University of California are vested by the Constitution with the legal title and management of property of the University of California and have the unrestricted power to take and hold real and personal property for the benefit of the university. (Cal. Const., art. IX, § 9, subd. (f).) Thus, the University of California is not subject to local regulations with regard to its use or management of the property held by the Regents in public trust. (See *Hall* v. *City of Taft, supra,* at pp. 182-183.)

Nonetheless, "Whether or not the state law has occupied the field of regulation, cities may tax businesses carried on within their boundaries

---

[1]Ordinance No. 4703-N.S. provides:

"Section 1.2-26. PROFESSIONAL SPORTS EVENT.

"As used in this Ordinance, 'professional sports event' shall mean any sporting activity held at any place in the City of Berkeley wherein the participants are paid or compensated for their sporting services, whether in cash, securities, or otherwise and regardless of the amount of such services. Said definition shall not include athletes or students participating in athletic events wherein such athletes or students receive scholarships, grants-in-aid or similar financial support for educational purposes.

"Section 5.9. GROSS RECEIPTS TAX ON PROFESSIONAL SPORTS EVENTS.

"Every person commencing, transacting or carrying on any professional sports event in the City of Berkeley shall pay an annual license tax of ten percent (10%) of gross receipts measured as of the time or times such event or events as to which this tax is applicable may commence, be transacted or carried on in the City of Berkeley."

and enforce such taxes by requiring business licenses for revenue and by criminal penalties." (*In re Groves* (1960) 54 Cal.2d 154, 156 [4 Cal.Rptr. 844, 351 P.2d 1028].) A tax upon the operation of a business by a lessee of publicly owned property constitutes a tax upon the privilege of performing the business rather than a tax upon the property. (*Brunton* v. *Superior Court* (1942) 20 Cal.2d 202, 206-207 [124 P.2d 831].) "And where it merely appears that one operating under a government contract or lease is subjected to a tax with respect to his profits on the same basis as others who are engaged in similar businesses, there is no sufficient ground for holding that the effect upon the Government is other than indirect and remote. . . ." (*Helvering* v. *Producers Corp.* (1938) 303 U.S. 376, 386-387 [82 L.Ed. 907, 914-915, 58 S.Ct. 623]); the fact that a tax may constitute an indirect burden upon an organ of government does not invalidate the tax. (5 Witkin, Summary of Cal. Law (8th ed. 1974) Taxation, § 11, p. 3995.)

█ In determining whether a municipal ordinance is a revenue or a regulatory measure, the courts will look to the substantive provisions of the ordinance. (*Arnke* v. *City of Berkeley* (1960) 185 Cal.App.2d 842, 847 [8 Cal.Rptr. 645] [upholding Ordinance No. 2805-N.S. as a revenue measure].) Ordinance No. 4703-N.S., which amends Ordinance No. 2805-N.S., contains no provision which would regulate the conduct of anyone who is subject to the ordinance; it only establishes a tax. Where the statute contains no regulatory provisions, but only provides for the subjects and amounts of taxation, "it is very clear that the license-tax upon the business alleged to be conducted . . . was imposed solely for the purpose of raising revenue." (*Ex Parte Braun* (1903) 141 Cal. 204, 206 [74 P.2d 780]; *In re Johnson* (1920) 47 Cal.App. 465, 466-467 [190 P. 852].) As noted in *Child Labor Tax Case* (1922) 259 U.S. 20, 38 [66 L.Ed. 817, 820, 42 S.Ct. 449, 21 A.L.R. 1432]: "Taxes are occasionally imposed in the discretion of the Legislature on proper subjects with the primary motive of obtaining revenue from them and with the incidental motive of discouraging them by making their continuance onerous. They do not lose their character as taxes because of the incidental motive. But there comes a time in the extension of the penalizing features of the so-called tax when it loses its character as such and becomes a mere penalty with the characteristics of regulation and punishment." In that case, the United States Supreme Court analyzed the provisions of the statute and, noting that the provisions included numerous regulatory features, held the "tax" to be in fact a regulation. A reading of Ordinance No. 2805-N.S. as amended by Ordinance No. 4703-N.S. establishes that the

only provision in the entire ordinance which could possibly be asserted to be a regulation would be the requirement of a license. However, the only purpose of the license requirement is to assure that the tax has in fact been paid; thus, the tax does not present a facade behind which a regulatory scheme has been hidden. (*Arnke* v. *City of Berkeley, supra,* 185 Cal.App.2d 842.)

■     Moreover, the mere fact that a tax has a collateral effect of regulating an activity does not make that tax any less a revenue-raising measure. "Every tax is in some measure regulatory. To some extent it interposes an economic impediment to the activity taxed as compared with others not taxed. But a tax is not any the less a tax because it has a regulatory effect, . . ." (*Sonzinsky* v. *United States* (1937) 300 U.S. 506, 513 [81 L.Ed. 772, 775, 57 S.Ct. 554]; accord *United States* v. *Sanchez* (1950) 340 U.S. 42, 45 [95 L.Ed. 47, 50, 71 S.Ct. 108]; *Magnano Co.* v. *Hamilton* (1934) 292 U.S. 40, 44 [78 L.Ed. 1109, 1114, 54 S.Ct. 599].) Furthermore, the motives of the legislative body exercising the taxing power are beyond the inquiry of the courts. (*United States* v. *Sanchez, supra,* at p. 45 [95 L.Ed. at p. 50]; *Sonzinsky* v. *United States, supra,* at pp. 513-514 [81 L.Ed. at pp. 775-776]; *Magnano Co.* v. *Hamilton, supra.*) Therefore, Ordinance No. 4703-N.S. must be construed as a revenue-raising measure despite its obvious collateral regulatory effect.

We note that in passing the ordinance the city council of appellant made emergency findings to the effect that the ordinance must be immediately effective due to danger to the public peace, health, and safety of the City of Berkeley as a result of the holding of professional sports events there.[2] The city charter required 30 days from the date of final passage of an ordinance before the ordinance could become effective; an exception to the 30-day waiting period was provided where the ordinance was intended for the immediate preservation of the public peace, health or safety, in which case the ordinance could become

[2]Ordinance No. 4703-N.S.
"BE IT ORDAINED by the Council of the City of Berkeley as follows:
    "*Section 1.* EMERGENCY FINDINGS AND STATEMENT OF URGENCY.
    "a. This Council finds and determines the public peace, health and safety are endangered by the holding of professional sports events in the City of Berkeley, and municipal traffic control, police, fire prevention, sanitary sewer and refuse collection services are materially and substantially increased by such events.
    "b. This Council further finds and determines that the municipal services attendant to such events will be required prior to the 30-day period provided for in Section 93 of the City Charter, and in order to maintain and for the immediate preservation of the public peace, health, safety and general welfare of the citizens of Berkeley, this ordinance is presently enacted and shall be effective immediately upon its adoption."

immediately effective. ■ Where an ordinance or statute is intended to promote the public health, safety, morals, and welfare, the ordinance constitutes a regulation within the police power of the governmental entity. (See *Graham* v. *Kingwell* (1933) 218 Cal. 658, 659 [24 P.2d 488]; *Miller* v. *Board of Public Works* (1925) 195 Cal. 477, 485 [234 P. 381, 38 A.L.R. 1479]; 5 Witkin, Summary of Cal. Law (8th ed. 1974) Constitutional Law, § 435, p. 3734.) It is inconsistent to apply an urgency effectiveness provision, intended for the expeditious exercise of the police power, to an enactment intended solely to raise revenues. Appellant's attempt to make its ordinance effective immediately rather than waiting the 30-day period otherwise prescribed by appellant's charter was thus ineffective, but it does not appear that any consequence flows from the postponed effectiveness of the ordinance.

Respondent asserts that appellant's counsel stipulated that the ordinance was a regulatory measure. ■ If there was such a stipulation, it was ineffective. The interpretation of the Constitution, statutes, and ordinances is a subject within the authority of the courts, not the parties. (See 5 Witkin, Summary of Cal. Law (8th ed. 1974) Constitutional Law, § 67 et seq., p. 3306 et seq.) The matters normally subject to stipulation relate to pleadings, issues, evidence, liability, procedure, and damages, but not to interpretation of the law. (See 1 Witkin, Cal. Procedure (2d ed. 1970) Attorneys, § 131 et seq., p. 142 et seq.)

Reversed.

Caldecott, P. J., and Rattigan, J., concurred.