[Civ. No. 61855. Second Dist., Div. Four. Jan. 19, 1982.]

NATIONAL INDEPENDENT BUSINESS ALLIANCE et al.,
Plaintiffs and Appellants, v.
CITY OF BEVERLY HILLS et al., Defendants and Respondents.

**COUNSEL**

Mitchell, Silberberg & Knupp, Daniel A. Weber and Roy L. Shults for Plaintiffs and Appellants.

Charles Haughton, City Attorney, Burke, Williams & Sorensen and Mark C. Allen, Jr., for Defendants and Respondents.

**OPINION**

**WEIL, J.**\*—On June 6, 1978, the voters of California adopted article XIII A (Prop. 13) to the California Constitution. Sections 4 and 5 of

\*Assigned by the Chairperson of the Judicial Council.

the article read as follows: "Sec. 4. Cities, Counties and special districts, by a two-thirds vote of the qualified electors of such district, may impose special taxes on such district, except ad valorem taxes on real property or a transaction tax or sales tax on the sale of real property within such City, County or special district.

"Sec. 5. This article shall take effect for the tax year beginning on July 1 following the passage of this Amendment, except Section 3 which shall become effective upon the passage of this article."

On June 6, 1978, respondent City of Beverly Hills confronted a reduction of approximately $4.9 million from its $21 million budget that was to go into effect within a month. The city council began consideration of proposed revenue measures, including increases in business license taxes, that would offset to some extent the anticipated revenue losses.

On June 29, 1978, the city council adopted ordinance number 1697 which increased business license taxes in several different categories. One such category included owners of commercial real property whose license tax rate was increased from $1.25 per $1,000 of income in excess of $66,000 to $23.50 per $1,000—an increase from approximately .0125 percent to approximately 2.35 percent.

Ordinance number 1697 was designated "an urgency ordinance" and was prefaced with the following findings: "The Council of the City of Beverly Hills finds and declares:

"1. On June 6, 1978, the Constitution of the State of California was revised by Proposition Number 13 to add Article XIII A which substantially reduces the amount of property taxes available to the City.

"2. The loss to the City of property taxes is in excess of $4,900,000.

"3. Unless the City is able to substantially replace the lost property taxes, it must reduce police and fire service, maintenance of the streets, sidewalks, alleys, trees and other property open to the public as well as other community services vital to the preservation of the public peace, health and safety.

"4. Although the State of California has enacted a bill which would authorize the distribution of approximately $205,000 of the surplus of

funds for the next fiscal year, to the City of Beverly Hills, these funds are insufficient and there is little probability that any state funds will be available in subsequent years.

"5. The cost of supplies, materials and other services required to provide necessary City services, increase [sic] substantially each year.

"6. Section 4 of Article XIII A provides therein that new taxes may not be imposed by the City after July 1, 1978 without approval of two-thirds (2/3) of the qualified electors, qualified electors being defined by Section 17 of the Elections Code of this State as any person 18 years of age and a resident of a precinct at least twenty-nine (29) days prior to an election, thus making it virtually impossible to obtain approval of any new taxes.

"7. It is necessary to impose the taxes set forth in this ordinance prior to July 1, 1978 if the City is to obtain the revenues to meet the usual and current expenses required to provide the services not only required by law but necessary for the immediate preservation of the public peace, health and safety of the City."

On December 12, 1978, the city council adopted ordinance number 1717 recodifying without significant change the city's business license taxes. This latter ordinance neither added new taxes nor increased the amounts of existing taxes. In (sec. 3) the city council, after making provisions for severability of the ordinance, provided: "If any section ... of this ordinance is for any reason held invalid or unconstitutional ... the corresponding section or portions thereof as it existed on June 30, 1978 ... shall again apply ...."

Thereafter appellants as persons liable for the increased commercial property business license tax filed the instant action challenging the constitutionality of the two ordinances.

Appellants moved for summary judgment on two grounds: (1) that the ordinances violated article XIII A, section 4 of the Constitution by imposing "special taxes" without prior voter approval, and (2) that certain infirmities existed in the enactment of the ordinances based on allegedly invalid assertions of "urgency" by the city. In their complaint appellants also asserted violations of their equal protection rights based on allegedly discriminatory business license taxes levied against the category in which appellants are classified; however, they did not seek summary judgment on this ground. Respondents made a cross-motion

for summary judgment as to all issues raised in the complaint, including those relating to equal protection. Both sides submitted declarations and other evidentiary material in support of and in opposition to the motions.

On April 9, 1980, the trial court entered a minute order denying plaintiffs' motion and granting defendants' motion based on a memorandum of decision of even date. Upon appellants' objection to the form of summary judgment prepared by respondents, the trial court signed the judgment in the form submitted by appellants.[1]

This appeal is taken from that judgment.

CONTENTIONS ON APPEAL

Appellants contend that the trial court erred while respondents maintain that the trial court ruled correctly on each of the following points: (1) that ordinances numbers 1697 and 1717 did not enact "special taxes" subject to prior voter approval under section 4 of article XIII A of

---

[1]Said judgment read in part as follows: "IT IS ORDERED, ADJUDGED AND DECREED that plaintiffs' first cause of action of their first amended complaint for injunction be dismissed.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Court declares:

"1. That Beverly Hills City Ordinance No. 78-01697 entitled:

"'AN URGENCY ORDINANCE OF THE CITY OF BEVERLY HILLS AMENDING SUBSECTION 6-1.109(c) OF ARTICLE 1, AMENDING SECTION 6-1.214 OF ARTICLE 2 OF CHAPTER 1 OF TITLE 6 OF THE BEVERLY HILLS MUNICIPAL CODE AND ADDING SECTION 61.214.2 THERETO RELATING TO BUSINESS LICENSE TAXES.' though adopted on June 29, 1978, after the effective date of Article XIII A of the California Constitution, is and was validly and properly enacted as an amendment to pre-existing business license ordinances and as an urgency measure, and that the Beverly Hills Municipal Code provisions concerning business licenses, as amended by said Ordinance No. 78-0-1697, were therefore valid and enforceable when adopted and remain valid and enforceable, except to the extent the provisions of the Beverly Hills Municipal Code have been subsequently amended.

"2. That Beverly Hills City Ordinance No. 78-0-1717 entitled:

"'ORDINANCE OF THE CITY OF BEVERLY HILLS AMENDING CHAPTER 1 OF THE TITLE 6 OF THE BEVERLY HILLS MUNICIPAL CODE RELATING TO BUSINESS LICENSES, PERMITS AND FEES, AND REPEALING SECTION 4-13-.01 OF CHAPTER 13 OF TITLE 4 OF THE BEVERLY HILLS MUNICIPAL CODE.' though adopted on December 12, 1978, after the effective date of Article XIII A of the California Constitution, is and was validly and properly enacted as an amendment to pre-existing business license ordinances and as an urgency measure, and that the Beverly Hills Municipal Code provisions concerning business licenses, as amended by said Ordinance No. 78-0-1717, were therefore valid and enforceable when adopted and remain valid and enforceable."

the California Constitution; (2) that ordinances numbers 1697 and 1717 were validly enacted as "urgency" measures; and (3) that said ordinances were not based on arbitrary and discriminatory criteria which denied equal protection of the laws to appellants.

## ISSUE ON APPEAL

The single issue before the court is whether or not the business license tax structure of the City of Beverly Hills was validly modified by ordinances numbers 1697 and 1717.

## DISCUSSION

■ Appellants and respondents each argue at length whether or not ordinance number 1697 is a "special tax" within the definition set forth in section 4 of article XIII A. This determination would be relevant if we were to hold that section 4 became effective on June 7, 1978, rather than July 1. For the reasons hereinafter stated we do not so hold; therefore it is unnecessary to dwell further on what nature of animal is the business license tax.

Appellants contend that we are bound by the language of the trial court in its judgment stating that ordinance 1697 "though adopted on June 29, 1978, *after the effective date of article XIII A of the California Constitution,* is and was validly and properly enacted as an amendment to preexisting business license ordinances and as an urgency measure, . . ." (Court's italics.) Being so bound, they contend, we cannot redetermine the effective date of article XIII A because no cross-appeal was filed by respondents. They cite as authority *Briggs* v. *Nilson* (1964) 226 Cal.App.2d 342, 349 [38 Cal.Rptr. 68] holding that "[a] respondent who does not cross-appeal is bound by the judgment as it was entered and cannot seek its reversal or modification."

*Briggs* is not authority for appellants' theory. In that case *respondent* sought not to support the judgment but to modify it. Of course this could not be done without a cross-appeal. In the instant case respondent City of Beverly Hills could appeal only if it were aggrieved by the judgment (Code Civ. Proc., § 902; *Moore* v. *Younger* (1976) 54 Cal.App.3d 1122 [127 Cal.Rptr. 171]; Cal. Const. art. VI, § 13).

Rather the law is that even if the trial court judgment is proper, but on the wrong grounds, this court may still affirm the judgment (Cal.

Const., art. VI, § 13; *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1 [112 Cal.Rptr. 786, 520 P.2d 10]).

We are bound to follow the square holding of *Kehrlein* v. *City of Oakland* (1981) 116 Cal.App.3d 332, 336 [172 Cal.Rptr. 111], that at least section 4 of article XIII A did not become effective before July 1, 1978. In dealing with the validity of two ordinances increasing the Oakland business license taxes which were adopted June 19, 1978, the *Kehrlein* court rejected an argument that section 4 became effective June 7, stating as follows (p. 336):

"Nothing in article XIII A, however, supports appellant's interpretation. On the contrary, an effective date of July 1, 1978, is dictated by the unambiguous language of the constitutional amendment. Article XIII A specifically states that, with the exception of section 3, it shall take effect on July 1. While section 3 was specifically made effective immediately, no such provision was made applicable to section 4."

The *Kehrlein* court went on to affirm the trial court's decision that the ordinances were constitutional. (See also, *Pugh* v. *City of Sacramento* (1981) 119 Cal.App.3d 485 [174 Cal.Rptr. 119], holding that the effective date of the constitutional provision proscribing a city transfer tax on the transfer of real property found in the same § 4 of art. XIII A of the Cal. Const. was July 1, 1978.)

Having found that the new ordinance was introduced and enacted two days prior to the date when the new constitutional provision became effective, we must now determine the validity of the council's action. This requires examination of Government Code sections 36934 specifying the time when ordinances may be passed and 36937 detailing the time when ordinances take effect. The former section provides that "[o]rdinances shall not be passed within five days of their introduction, . . . However, an urgency ordinance may be passed immediately upon introduction . . . ." The latter section provides that ordinances take effect 30 days after their final passage but that "[a]n ordinance takes effect immediately, if it is an ordinance:

"(a) .   .   .   .   .   .   .   .   .   .   .   .   .

"(b) [f]or the immediate preservation of the public peace, health or safety, containing a declaration of the facts constituting the urgency, and is passed by a four-fifths vote of the City Council.

"(c) . . . . . . . . . . . . . .

"(d) [r]elating to taxes for the usual and current expenses of the city."

The purpose of the requirement in section 36934 of a five-day waiting period before an ordinance can be passed has been said to be for allowing time for consideration, with a view to preventing hasty and ill-considered legislation (*In re East Bay etc., Water Bonds of 1925* (1925) 196 Cal. 725 [239 P. 38]).

■ An ordinance passed in violation of Government Code section 36934 is invalid or rendered ineffective regardless of its subject matter. (*City of Colton* v. *City of Rialto* (1964) 230 Cal.App.2d 174, 180-181 [40 Cal.Rptr. 766].) If otherwise valid, by reason of Government Code section 36937, an ordinance does not become effective until 30 days after it is adopted.

Appellants argue that the ordinance could not have become effective on the same day that it was introduced because "the city council trumpeted its objective of avoiding recourse to the instrumentality prescribed by the California Constitution under article XIII A, section 4, *i.e.*, submission of the ordinance to a vote of the People. This was the avowed predicate of this alleged 'urgency' ordinance." However, even if that had been the council's secret intent rather than its express intent, it would be irrelevant if the council had the power to enact it at the time that it did. ■ "The motives of a city's legislative body in passing an ordinance will not ordinarily be considered in determining its validity, in the absence of a showing of fraud, at least where nothing on the face of the ordinance shows that it was passed for improper motives, or where its passage for improper motives is not inferable from its operation or effect under circumstances of which judicial notice may be taken. There is a presumption that the legislative body acted from proper motives." (45 Cal.Jur.3d, Municipalities, § 202, pp. 320-321.)

■ Respondents correctly suggest that ordinance number 1697 was properly enacted before July 1, 1978, as a tax measure for the usual and current expenses of the city. The question of what are such "usual and current" expenses is one that, at least until July 1, 1978, was vested in city councils without judicial interference.

Appellants suggest that ordinance number 1697 internally negated the existence of any authentic "urgency" because the initial revenues

pursuant to the new rate structure were to be based on gross receipts for the calendar year ending December 31, 1978, which event would not occur until at least six months after the enactment of the new ordinance. Therefore, argue the appellants, there was no "urgency" in the temporal sense aside from the city's urgent desire to bypass a popular vote which it feared. Such is not the case. In the findings adopted by the city council, it was expressly found that the loss to the city of property taxes was in excess of $4.9 million (finding No. 2), that unless the city was able to substantially replace the lost property taxes, it must reduce police and fire service, maintenance of the streets, sidewalks, alleys, trees and other property open to the public as well as other community services vital to the preservation of the public peace, health and safety (finding No. 3) and that it was necessary to impose the new taxes set forth in this ordinance prior to July 1, 1978, if the city was to obtain the revenue to meet the usual and current expenses required to provide the services not only required by law but necessary for the immediate preservation of the public peace, health and safety of the city (finding No. 7).

We need not consider whether the findings as set forth above support the elimination of the 30-day waiting period under Government Code section 36937, subdivision (b) (the emergency police power ordinance) since such findings clearly support the 30-day waiver under section 36937, subdivision (d) providing that an ordinance "relating to taxes for the usual and current expenses of the city" takes effect immediately. The fact that the money realized thereunder would not be collected until some time in the future is not determinative; a city budget providing for the collection and expenditure of $21 million over a 12-month period is not like a game of put and take where a legislative body must conclude that only the bills payable tomorrow are the "usual and current" civic expenses for which it is permitted to adopt an urgency ordinance today. One reason an ordinance relating to taxes for the usual and current expenses of the city takes effect immediately is because, at least up until the effective dates of the various portions of article XIII A, such ordinance has been a legislative matter that was not subject to referendum (*Dare* v. *Lakeport City Council* (1970) 12 Cal.App.3d 864 [91 Cal.Rptr. 124]).

Since Government Code section 36937 declares that an ordinance relating to taxes for usual and current city expenses takes effect immediately, it follows logically that such an ordinance may be deemed to be an urgency ordinance actionable immediately upon introduction

within the meaning of Government Code section 36934 provided appropriate findings are made, as they have been in the instant case. In *City of Commerce v. State Board of Equalization* (1962) 205 Cal.App.2d 387, 391 [23 Cal.Rptr. 143], a newly incorporated city introduced, passed and made effective a tax ordinance on the first day of the city's existence. The court ultimately held against the city on other grounds but stated concerning the taxing ordinance (p. 391): "[H]owever, the ordinance before us here is one relating to taxes for the usual and current expenses of the City and ... becomes effective immediately upon its adoption."

In *Oakland Raiders v. City of Berkeley* (1976) 65 Cal.App.3d 623 [137 Cal.Rptr. 648], the city had appealed from a summary judgment enjoining it from collecting a tax imposed by a city ordinance providing that professional sports events would be subject to an annual license tax of 10 percent of gross receipts. The ordinance was passed as an urgency measure, making it immediately effective. The Court of Appeal reversed, holding that a tax on a business operated by a lessee of publicly owned property (in this case the use of California Memorial Stadium at the University of California pursuant to a rental agreement with the Regents of the University of California) was valid as a tax on the privilege of performing the business rather than a tax on the property, and that the tax in question was proper even though it had a collateral regulatory effect. Appellants rely on the following language from the *Oakland Raiders* case to support their contention that the adoption of ordinance number 1697 in the instant case as an urgency measure was improper: "We note that in passing the ordinance the city council of appellant made emergency findings to the effect that the ordinance must be immediately effective due to danger to the public peace, health, and safety of the City of Berkeley as a result of the holding of professional sports events there. [Fn. 2 omitted.] The city charter required 30 days from the date of final passage of an ordinance before the ordinance could become effective; an exception to the 30-day waiting period was provided where the ordinance was intended for the immediate preservation of the public peace, health or safety, in which case the ordinance could become immediately effective. Where an ordinance or statute is intended to promote the public health, safety, morals, and welfare, the ordinance constitutes a regulation within the police power of the governmental entity. (See *Graham v. Kingwell* (1933) 218 Cal. 658, 659 [24 P.2d 488]; *Miller v. Board of Public Works* (1925) 195 Cal. 477, 485 [234 P. 381, 38 A.L.R. 1479]; 5 Witkin, Summary of Cal. Law (8th ed. 1974) Constitutional Law, § 435, p. 3734.) It is inconsistent to

apply an urgency effectiveness provision, intended for the expeditious exercise of the police power, to an enactment intended solely to raise revenues. Appellant's attempt to make its ordinance effective immediately rather than waiting the 30-day period otherwise prescribed by appellant's charter was thus ineffective, but it does not appear that any consequence flows from the postponed effectiveness of the ordinance."

Appellants' reliance is misplaced. To begin with, the observation of the court that "It is inconsistent to apply an urgency effectiveness provision ... to an enactment intended solely to raise revenues" is dictum and is not supported by any authority. Furthermore, the case is distinguishable from the one at bench because the "emergency findings and statement of urgency" for the Berkeley ordinance deal solely with the endangerment of the "public peace, health and safety" without mentioning taxes for the usual and current expenses of the city or the necessity for raising the same. There is no showing that the Berkeley City Charter contained the same provision as Government Code section 36937, subdivision (d) which applies to the City of Beverly Hills as a general law city. Finally, there is a significant factual distinction between the urgency involved in enacting a 10 percent ticket tax to cover the cost of policing a football game and an effort to instantly replace almost a quarter of a city's $21 million budget at a time when it is otherwise proper to do so.

Appellants next contend that even if ordinance 1697 was enacted prior to the operative date of article XIII A, section 4, ordinance number 1717 was not. So far so good. However, ordinance number 1717 does nothing more than recodify the provisions of ordinance number 1697 which we have found to be valid. The later ordinance neither imposes new taxes nor raises the rates of any existing taxes. The fact that it contains a "savings clause" cannot alone support an attack on its validity if the ordinance is otherwise valid, as we hold it to be.

Finally appellants urge that summary judgment was improperly granted in favor of respondents on a denial of appellants' claim that the challenged ordinances, as applied to appellants, "contain classifications of businesses and impose variant business license taxes based upon *discriminatory or arbitrary criteria*." (Italics added.) They argue that summary judgment in favor of respondents on equal protection issues was unwarranted because of "the broad factual questions inherent in such issues."

The purpose of summary judgment is to determine if there are underlying triable issues of material fact. While it is true that the court may not resolve such issues if they exist, if there are no such issues the very purpose of a summary judgment is to put the litigation to an end (Code Civ. Proc. 437c; *Bank of America, etc.* v. *Oil Well S. Co.* (1936) 12 Cal.App.2d 265 [55 P.2d 885]).

Appellants shoulder a heavy burden in attempting to establish any triable issue of material fact as to the unconstitutionality of the ordinance. " . . . [A]n attack upon a tax classification based upon a claim that equal protection has been violated is a most difficult enterprise. ■ '[I]t has long been the rule that tax classifications carry a presumption of constitutionality which can be overcome only by the most explicit demonstration that the classification fosters hostile and oppresive discrimination against particular persons or groups.' (*Arp* v. *Workers' Comp. Appeals Bd.* (1977) 19 Cal.3d 395, 403 [138 Cal.Rptr. 293, 563 P.2d 849].) The burden of making that showing rests upon the party who challenges the classification. (*Ganschow* v. *Ganschow* (1975) 14 Cal.3d 150, 158 [120 Cal.Rptr. 865, 534 P.2d 705], app. dism. 423 U.S. 887 [46 L.Ed.2d 118, 96 S.Ct. 181]." (*Kay* v. *Pacific Tel. & Tel. Co.* (1978) 83 Cal.App.3d, 814, 817 [148 Cal.Rptr. 213].)

In *City of Los Angeles* v. *London Towne Livery Service, Ltd.* (1979) 97 Cal.App.3d 814 [159 Cal.Rptr. 94], a city sued to collect taxes under a municipal ordinance taxing persons transporting passengers for hire if the defendant's vehicles used on trips originated or terminated within the city. The trial court entered summary judgment in favor of defendant transportation service on the ground that the ordinance was unconstitutional. The Court of Appeal reversed, holding that the ordinance was constitutional on its face. The court stated (pp. 819-820): "'[A]n attack upon a tax classification based upon a claim that equal protection has been violated is a most difficult enterprise.' [Citation.] The ordinance carries a presumption of constitutionality which can be overcome only by strong evidence that the classification oppressively discriminates against a particular person or group. The burden of such a showing rests upon the party challenging the classification."

■ The only evidence presented to the trial court by appellants herein consisted of declarations describing the so-called "draconian" increase in one section of the business license tax classification. Such evidence alone of tax increases, even enormous increases, is not evidence

of a lack of equal protection. (*Fox etc., Corp.* v. *City of Bakersfield* (1950) 36 Cal.2d 136, 139 [222 P.2d 879].)

Nor is appellants' position supported by their suggestion that further discovery is required in order to demonstrate that by ordinance number 1697 the city council sought to make up some or all of the real property tax revenue lost as a result of article XIII A and if the council did seek to make up that lost revenue such action somehow constitutes a lack of equal protection. Such was the case of the ordinances adopted in *Kehrlein* v. *City of Oakland, supra*, 116 Cal.App.3d 332 in which the court stated the following (at p. 335): "The ordinances were adopted ostensibly because the Oakland City Council felt that adjustments to the existing tax rates were necessary after the passage of Proposition 13 and its attendant anticipated 57 percent reduction in property tax revenues. Their evident purpose was to maintain an equitable tax rate structure among the various business classifications, based upon relative profit margins. Certain types of business, it was believed, and particularly apartment house owners, would experience a dramatic increase in profit margins as the result of article XIII A. The ordinances were also enacted as a general response to the anticipated loss of municipal revenues due to the passage of article XIII A, and in fact, the anticipated increase in tax revenues from all classifications pursuant to the ordinances was expected to treble antecedent revenues."

Appellants' further arguments as to evidence that might result from further discovery are not meritorious. None of such matters would create triable issues of material fact. The trial court was correct in giving the ordinance the benefit of the presumption of constitutionality since there was no evidence before it that would create a triable issue of fact to rebut such presumption.

The judgment is affirmed.

Woods, Acting P. J., and McClosky, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied April 7, 1982. Kaus, J., did not participate therein.