[Civ. No. 21806. Third Dist. Apr. 30, 1984.]

NORTHGATE PARTNERSHIP et al., Plaintiffs and Appellants, v. CITY OF SACRAMENTO et al., Defendants and Respondents.

[Civ. No. 21807. Third Dist. Apr. 30, 1984]

CENTEX HOMES OF CALIFORNIA, INC., et al., Plainitffs and Appellants, v. CITY OF SACRAMENTO et al.,Defendants and Respondents.

66

COUNSEL

Hefner, Stark & Marois, Timothy D. Taron and Joel S. Levy for Plaintiffs and Appellants.

James P. Jackson, City Attorney, and Theodore H. Kobey, Jr., Assistant City Attorney, for Defendants and Respondents.

OPINION

CARR, J.—Appellants appeal from the judgments entered upon the granting by the trial court of respondents' motions for summary judgment.[1] Appellants sought a declaration that a real estate transfer tax imposed by respondent City of Sacramento was invalid, and requested a refund of taxes paid under protest. Appellants are the record owners of real property in the City of Sacramento (City). They had paid a total of $23,858.68 in real estate transfer taxes to City as of July 28, 1980.

The sole issue on appeal is whether the ordinance was a validly enacted emergency measure in force prior to the effective date of Proposition 13, which expressly prohibits the imposition of a tax of this nature.

FACTS

On June 6, 1978, the California electorate voted to add article XIII A (commonly known as the Jarvis-Gann Property Tax Initiative or Proposition 13) to the California Constitution.

Article XIII A is comprised of six sections. The first and second respectively limit tax rates and provide assessment standards for real property. Section 3 limits the method of changes in state taxes: "From and after the effective date of this article, any changes in State taxes enacted for the purpose of increasing revenues collected pursuant thereto whether by increased rates or changes in methods of computation must be imposed by an Act passed by not less than two-thirds of all members . . . of the Legislature, *except that no new* ad valorem taxes on real property, or *sales or transaction taxes on the sales of real property may be imposed.*" (Italics added.)

---

[1]Pursuant to stipulation of counsel, these cases were consolidated for trial and again for purposes of this appeal.

Section 4 imposed similar restrictions upon local entities: "Cities, Counties and special districts, by a two-thirds vote of the qualified electors of such district, may impose special taxes on such district, *except* ad valorem taxes on real property or *a transaction tax or sales tax on the sale of real property within such City, County or special district.* " (Italics added.)

Section 5 sets the effective date of the article: "This article shall take effect for the tax year beginning on July 1 following the passage of this Amendment, except Section 3 which shall become effective upon the passage of this article."

On June 29, 1978, respondent City enacted an ordinance[2] imposing a tax of one-fourth of one percent of the value of the consideration on all sales or transfers of real property in the City. The ordinance became effective immediately as an emergency measure, pursuant to a declaration of emergency as provided by the City charter[3] and contained the following declaration of urgency: "*SECTION 4.* [¶] This ordinance is hereby declared to be an emergency measure to take effect immediately. The facts constituting the emergency are the need immediately to provide for revenue for the usual and current expenses of the City to mitigate the extreme revenue loss which will result from the Jarvis-Gann initiative which becomes effective July 1, 1978."

In *Pugh* v. *City of Sacramento* (1981) 119 Cal.App.3d 485, 491 [174 Cal.Rptr. 119], we held that Proposition 13 by its statutory language, except

---

[2]Ordinance No. 4101, adding article IX to chapter 41 of the Sacramento City Code, provides in pertinent part: "Sec. 41.127 *Purpose.* The tax imposed under this article is solely for the purpose of raising income and revenue which is necessary to pay the usual and current expenses of conducting the municipal government of the City of Sacramento. [¶] Sec. 41.128 *Imposition of Tax.* There is hereby imposed a tax on all transfers by deed, instruments, writings or any other document by which any lands, tenements or other interests in real property sold, located in the City of Sacramento, are or is granted, assigned, transferred or otherwise conveyed to or vested in a purchaser, or purchasers thereof, or any other person or persons, by his or their direction. Said tax shall be levied at the rate of one fourth of one percent of the value of consideration."

[3]Article III, section 32 of the City charter provides in pertinent part: "Section 32 *Ordinances.* [¶] (f) *Except as otherwise provided in this Charter, each adopted ordinance shall become effective at the expiration of thirty (30) days after adoption or at any later date specified therein.* [¶] (g) *The following ordinances shall take effect immediately upon adoption or at such later dates as may be specified therein:* [¶] (1) An ordinance calling for or otherwise relating to an election; [¶] (2) *An ordinance adopted as and declared by the city council to be an emergency measure, containing a statement of the facts constituting such emergency,* if adopted by the affirmative votes of at least six members of the council; provided, that no measure making a grant, renewal or extension of a franchise or other special privilege or regulating the rate to be charged for its service by a public utility, other than one operated by the city, may be so enacted; and [¶] (3) An ordinance adopted pursuant to a state law by virtue of which such ordinance shall be effective immediately." (Italics added.)

as to section 3, became effective July 1, 1978, and the ordinance at issue herein was not affected nor rendered invalid by the provisions of Proposition 13.

These appellants assert the emergency declaration contained in the ordinance is invalid as a matter of law and the ordinance in question became effective, if at all, 30 days after enactment, or July 29, 1978. Since Proposition 13 expressly proscribes local transfer tax measures as those contained in the ordinance and became effective July 1, 1978, appellants reason the ordinance is perforce invalid.

### DISCUSSION

■ The principles of law governing our review are: "In the absence of evidence to the contrary it will be assumed that a municipal legislative body in enacting an emergency ordinance acted on sufficient inquiry as to whether an emergency existed. Its declaration is prima facie evidence of the fact. Where the facts constituting the emergency or urgency are recited in the ordinance and are such that they may reasonably be held to constitute an emergency, the courts will not interfere, and they will not undertake to determine the truth of the recited facts." (45 Cal.Jur.3d, Municipalities, § 199, p. 315; fns. omitted.) ■ Under the doctrine of separation of powers, which applies to local legislative bodies, we may not invalidate legislation in the absence of "some overriding constitutional, statutory or charter proscription." (*City and County of San Francisco* v. *Cooper* (1975) 13 Cal.3d 898, 915-916, and fn. 7 [120 Cal.Rptr. 707].)

■ The ordinance contains a declaration of emergency and a statement of facts constituting the emergency. Such action is specifically authorized by article III, section 32, subdivision (g)(2) of the City charter. Both the courts and the Legislature have recognized the emergency situation created for local governments created by the passage of Proposition 13. (*Jarvis* v. *Cory* (1980) 28 Cal.3d 562, 573 [170 Cal.Rptr. 11, 620 P.2d 598]; Stats. 1978, ch. 292, § 40, p. 613.) Moreover, the record here discloses City was faced with an estimated revenue loss from Proposition 13 of $16.6 million for fiscal year 1978-1979, representing over 27 percent of general fund revenues forecast for 1978-1979. Such a loss of revenue, if not made up by other sources, would necessitate cuts in city services of varying magnitudes.

On this record, we agree City was faced with an emergency situation, one requiring a tax to provide revenue for the usual basic and current expenses of City.

Appellants, however, assert the need for revenue to provide for the expenses of a municipality does not as a matter of law constitute an emergency

and cite *San Christina etc. Co.* v. *San Francisco* (1914) 167 Cal. 762 [141 P. 384], and *Burr* v. *San Francisco* (1921) 186 Cal. 508 [199 P.1034, 17 A.L.R. 581] in support thereof.

These cases are neither apposite nor controlling. Each involved efforts by the municipality to suspend a taxation limitation provision contained in the San Francisco City Charter. The charter contained a restriction on the general taxing power of the municipality in that the annual levy could not exceed $1 per $100 valuation of the property assessed. An exception to this dollar limit was the existence of a "great necessity or emergency" as found and declared by the board of supervisors in a regularly passed ordinance. The municipality declared the existence of an emergency to meet the emergencies created by the 1906 earthquake four years after the earthquake in the *San Christina* case and eight years after the earthquake in the *Burr* case and imposed taxes in excess of the dollar limit. (*San Christina* 167 Cal. at pp. 764-766; *Burr* 186 Cal. at pp. 510-512.)[4]

The *San Christina* case came for appellate review on a dismissal entered upon the sustaining of a demurrer without leave to amend in a taxpayer's suit for refund of taxes paid under protest pursuant to the "emergency" ordinance. On appeal the appellant taxpayer contended the existence or nonexistence of a great necessity or emergency justifying the temporary suspension of the dollar limit was a question of fact; that the finding of this fact by the supervisors was a prerequisite to suspension of the tax limitation but that such determination was not final and was subject to judicial review. Respondent City contended the finding of the board of supervisors, entered upon the journal of the board, was conclusive on the courts. This assertion was premised on City's assertion that such determination was a legislative determination and therefore not subject to review by the courts.

The Supreme Court held the rule that a legislative determination of a fact is conclusive on the courts was applicable only to the state Legislature and not to inferior legislative boards, bodies, or other tribunals. The declaration by the board of supervisors was therefore not conclusive, the complaint stated a cause of action and the general demurrer was improperly sustained. The judgment of dismissal was reversed and the case remanded to permit the taxpayer to plead and to have the trial court determine after a hearing on the merits the existence or nonexistence of a "great necessity or emergency." *San Christina, supra,* 167 Cal. 762, does not hold that the need for revenue to provide for municipal expenses does not as a matter of law constitute an emergency. It simply holds such determination under the San Francisco charter provision was a factual matter, subject to judicial review.

---

[4]We can only assume emergencies, like travel, moved at a much slower pace in the early 1900's.

*Burr* v. *San Francisco, supra,* 186 Cal. 508, is an excellent example that old cases do not necessarily improve with the aging process, particularly when the holding is based on a misconstruction of a prior old case. In *Burr, supra,* the ever optimistic Board of Supervisors of San Francisco again passed an ordinance to exempt from the charter tax limitation certain taxes for municipal expenses by reason of the "great necessity or emergency" imposed by the 1906 earthquake. Predictably a taxpayer who paid taxes under protest filed suit to recover the taxes on the basis of the invalidity of the ordinance. Pursuant to *San Christina* v. *San Francisco, supra,* the issues were joined, a trial was held and the trial court entered judgment against the plaintiff taxpayer. In reversing this judgment the *Burr* court held there was no essential difference between the facts recited in the ordinance under consideration and that in the earlier *San Christina* case wherein the court held the ordinance to be "insufficient to show either "[great necessity or emergency]." We perceive this to be a complete misinterpretation of the *San Christina* case, wherein the court stated the "question . . . calls for first consideration by the trial court." In dicta the court observed that the use of the adjective "great . . . plainly means a necessity or emergency of grave character and serious moment" . . . and presents a situation in which "the trial court will scrutinize the items presented; first, to determine whether or not the great emergency or necessity, within the meaning of the charter, existed at the time of the levy, and second, whether, if it be found that such emergency or necessity did in fact exist, any of the items in the levy do not fairly come within the purport and scope of such emergency levy." (167 Cal. at pp. 773-774.)[5]

Moreover, the vitality of *San Christina's* decision that the legislative acts of inferior legislative tribunals such as municipalities are not to be accorded deference has been eroded by judicial evolution.

In *National Independent Business Alliance* v. *City of Beverly Hills* (1982) 128 Cal.App.3d 13 [180 Cal.Rptr. 59], an ordinance virtually identical to that at issue was upheld as properly adopted as an emergency ordinance prior to the effective date of Proposition 13. The court rejected the assertion that the only urgency was the city's urgent desire to bypass the proscriptions of Proposition 13, which would be effective two days after enactment of the ordinance. The court held: "Such is not the case. In the findings adopted by the city council, it was expressly found that the loss to the city of property taxes was in excess of $4.9 million (finding No. 2), that unless the city was able to substantially replace the lost property taxes, it must reduce

---

[5]The issue by the time of the *Burr* decision was also somewhat moot as the supervisors in 1915 proposed an amendment to the tax limitation section of the charter and called a special election at which the amendment was adopted which excepted from the tax limit nearly all the matters in the ordinance at issue. *Burr* was filed in 1921.

police and fire service, maintenance of the streets, sidewalks, alleys, trees and other property open to the public as well as other community services vital to the preservation of the public peace, health and safety (finding No. 3) and that it was necessary to impose the new taxes set forth in this ordinance prior to July 1, 1978, if the city was to obtain the revenue to meet the usual and current expenses required to provide the services not only required by law but necessary for the immediate preservation of the public peace, health and safety of the city (finding No. 7)." (128 Cal.App.3d at p. 23.)

Beverly Hills is a general law city governed by the provisions of the Government Code and Sacramento is a charter city which must operate within the constraints of its charter, but the reasoning of the *National Independent Business Alliance, supra,* 128 Cal.App.3d 13, is persuasive and the issues are essentially the same, though the authority for actions of the cities is found in different sources. Government Code section 36934 requires a five-day waiting period after introduction of an ordinance unless it is an urgency measure and the Sacramento City Charter requires a thirty-day waiting period after adoption for effectiveness unless a declaration of emergency is made by the city council. In each case, the factual findings made by the city council to support the declaration of urgency or emergency were substantially the same; in each case, the trial court, on motion for summary judgment, determined the ordinance was a valid emergency ordinance. We concur with the reasoning of *National Independent Business Alliance.*

Appellants urge the decision in *Oakland Raiders* v. *City of Berkeley* (1976) 65 Cal.App.3d 623 [137 Cal.Rptr. 648], supports their contention that adoption of the instant ordinance as an emergency measure was improper. The court there upheld the validity of a tax on a business operated by a lessee of publicly owned property, but noted the ineffectiveness of an urgency provision in the ordinance declaring such a provision was intended to apply only to the expeditious exercise of the police power, rather than to an enactment intended solely to raise revenue. (At pp. 628-629.)

*Oakland Raiders* does not assist appellants. The statement in *Oakland Raiders* that it is inconsistent to apply an urgency provision to an ordinance intended solely to raise revenue was dictum and not supported by any authority. (*National Independent Business Alliance* v. *City of Beverly Hills, supra,* 128 Cal.App.3d 13, 25.) Moreover, the ordinance in *Oakland Raiders* imposed a license tax for public peace, health and safety purposes related to sports events, rather than for the usual expenses of the City. (*Oakland Raiders, supra,* 65 Cal.App.3d at pp. 626, fn. 1, 628, fn. 2.)

In the case at bar, City was faced with a serious shortfall in revenues caused by passage of Proposition 13, and stated a need for revenues to meet

its usual and current expenses. Appellants' assertion that the charter does not contain sufficient authorization for passage of an emergency measure is not supported by a plain reading of the charter. Appellants further contend emergency measures, absent express authorization, are limited to situations requiring the preservation of public peace, property, health, safety and morals.

Appellants err. Article III, section 32, subdivision (g)(2) of the charter provides for certain ordinances to become effective immediately, among them "[a]n ordinance adopted as and declared by the city council to be an emergency measure, . . ." The charter, which operates as a limitation on the exercise of municipal power, contains no restriction on the enactment of a tax as an emergency measure. City may, in the proper exercise of its power of taxation, validly pass such an emergency measure pursuant to its charter. (See *City of Glendale* v. *Trondsen* (1957) 48 Cal.2d 93, 98 [308 P.2d 1].)

The record before us discloses City properly imposed the instant tax, and that such tax was a validly enacted emergency measure, effective prior to the effective date of Proposition 13. Our decision is compelled by the principles of separation of powers and deference to the determination of the legislative body, which found the existence of an emergency and acted pursuant to its charter.

The judgment is affirmed.

Puglia, P. J., and Blease, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied July 11, 1984.