[Civ. No 19846. Third Dist. May 1, 1981.]

E. C. BARNES, Plaintiff and Appellant, v.
STATE BOARD OF EQUALIZATION, Defendant and Respondent.

. . . . .

COUNSEL

Brian J. Cretney for Plaintiff and Appellant.

George Deukmejian, Attorney General, Edward P. Hollingshead and Charles C. Kobayashi, Deputy Attorneys General, for Defendant and Respondent.

OPINION

**REGAN, Acting P. J.**—Plaintiff filed a complaint for declaratory relief and refund of sales and use tax, alleging he had erroneously overpaid such taxes and had filed a claim for a refund from the defendant board, which had been denied.[1] In addition to the allegation of erroneous overpayment, plaintiff alleged that certain statutes and regulations are unconstitutional in that they impose sales and use taxes which unconstitutionally discriminate against the United States and contractors, including plaintiff, who deal with the United States. It was alleged that the board's denial of the claim for refund was arbitrary, capricious and unreasonable.

Defendant moved for summary judgment in the trial court on the ground that plaintiff had failed to allege facts constituting a cause of action against the board and had failed to exhaust his administrative remedies. Moreover defendant asserted in its motion that plaintiff had neither filed tax returns with, nor paid sales or use taxes to the board.

After the customary declarations and points and authorities had been filed and studied by the trial court, it granted the motion for summary judgment and dismissed the complaint. Plaintiff appeals from the ensuing summary judgment.

On appeal, plaintiff contends (a) the declarations filed by defendant do not deny that he had overpaid taxes to the board, are insufficient to establish that the administrative procedure was incomplete and offer no support for summary judgment; (b) declarations filed by plaintiff assert

---

[1]The amount of tax involved was approximately $50,000, which plaintiff alleged was paid on items "not taxable" to plaintiff and which had been paid on items "sold for resale upon which no tax was due ...."

that triable issues are present; (c) the demand for copies of all plaintiff's records by the board was irregular, burdensome and in excess of proper discovery procedure; (d) the claim by plaintiff for a refund and its denial completed the administrative procedure, leaving plaintiff free to pursue this action; (e) this case involves a federal question, requiring the review of certain provisions of the Revenue and Taxation Code and regulations as to their validity under federal decisions; (f) the board's characterization of its tax as a sales tax must give way to a decision in a certain federal case; and (g) the trial court abused its discretion in granting the motion for summary judgment.

A claim, dated October 20, 1976, for refund of sales and/or use taxes (hereinafter sales tax) paid in error "pursuant to erroneous interpretation of regulation and statute" was transmitted to the board on behalf of Pride Electric Company of Rialto, California, by the Audit Agency, Inc., of Glendale, California. It was received by the board on November 1, 1976.[2] That claim asserted that (a) items of machinery, materials, fixtures or other personalty were installed by plaintiff in connection with sales of such installed equipment to the United States; (b) sales tax was paid due to erroneous interpretation of board regulations 1521 and 1615; (c) sales tax was paid on certain items of machinery, materials and other personalty having been sold for resale to entities exempt from California sales tax; (d) the measure of the tax was computed (contrary to law) on items of labor, services or separately stated transportation charges; (e) sales tax was imposed (contrary to law) on rentals or leases to entities exempt from the sales tax; and (f) sales tax was paid on some sales of personal property under the mistaken theory that plaintiff had self-consumed the property, whereas under the law such sales were sales for resale, or sales to tax exempt entities upon which no sales tax could be imposed.

Upon receipt of the above claim, the board staff accepted it as a valid claim for refund and wrote to plaintiff's agent, Audit Agency, Inc., (copy to plaintiff) on November 19, 1976, requesting the following data as essential "to support the contentions in your claim":

"1. Date of sale or purchase

"2. Contract number and/or invoice number

---

[2]Audit Agency, Inc., was the authorized agent of Pride Electric Company for the purpose of seeking a refund, and plaintiff herein, E. C. Barnes, owned ("was the same person as") Pride Electric Company.

"3. Description and sales/purchase price of each item claimed to be exempt

"4. Specific basis for claim for exemption for each item (e.g. sale for resale, sale to U.S. Government, exempt labor, etc.)

"5. Period in which tax was paid or reported and the amount of tax paid or reported on each item

"6. If claimed as exempt sale to U.S. Government, provide a copy of the government purchase order and contract

"7. If claimed as exempt for resale, provide a timely resale certificate

"8. In the case of contracts, provide contract files and bid sheets, job estimates, etc., for each contract

"9. In the case of rental receipts or payments, provide a copy of the rental agreement

"10. Copies of sales invoices, contracts, purchase orders, purchase invoices, internal charges and any other detailed data necessary to support your claim."

On March 4, 1977, the board staff wrote to Audit Agency, Inc., (copy to plaintiff) informing them that no verifiable data had been presented in support of the claim and that if the data referred to in the letter of November 19, 1976, was not presented to the local district office of the board within 30 days from the date of the March 4 letter, the staff would "have no alternative but to recommend the claim be denied." This demand for factual data to support the claim for refund was entirely proper.

On May 24, 1977, a copy of the staff recommendation to the board was sent to plaintiff, stating, inter alia, "The claimant and his representative, Mr. E. D. Oliver[3] and Audit Agency, Inc., have been asked to

---

[3]E. D. Oliver was authorized by plaintiff in writing to be his agent in this matter, together with Audit Agency, Inc. The original claim for refund was on Audit Agency, Inc., stationery and signed by E. D. Oliver on the signature line designated as "Authorized Signature."

provide supporting data. A considerable period has been allowed, but none has been offered. The claimant and his representative have been notified of pending denial. [¶] It is recommended that the $50,000 claim for refund be denied for lack of substantiation."

Finally, a formal "Notice of Denial of Claim for Refund," dated August 12, 1977, was sent from the board's main office in Sacramento to plaintiff.

After the complaint of November 10, 1977, was filed in superior court, and the answer (consisting principally of denial of the allegations, except for admitting the filing of the claim) was filed February 22, 1978, defendant filed its motion for summary judgment. The grounds were that (a) plaintiff had failed to exhaust its administrative remedies; (b) the board did not act arbitrarily or capriciously; (c) plaintiff is not entitled to declaratory relief; and (d) the validity of regulation 1521 (the principal regulation challenged) has been upheld. Defendant board contended plaintiff's complaint thus raised no triable issue of fact.

The motion for summary judgment was supported by declarations of Donald J. Hennessey, staff attorney for the board, and Donald Holmes, supervising tax auditor for the board. Holmes set forth essentially the chronological history of the claim and the failure to submit any factual substantiation, as outlined above. Hennessey set out the case law which had upheld the validity of regulation 1521 dealing with sales tax as applied to United States government contractors, which case law he asserted to be dispositive of the issues of invalidity of the sales tax as applied to plaintiff in the transaction involved in this case. He supported his conclusion by giving the history of the board rulings leading up to the regulation in question, going back to 1945 and explaining previous litigation on the subject and administrative decisions on similar cases with which he had dealt.

In opposition to the motion for summary judgment, plaintiff took the position that (a) the board must comply with decisions of the United States Supreme Court and had not done so in this case; (b) plaintiff had standing to sue in superior court "upon a showing at the trial of the action that the transactions which are the subject of this litigation are sales to the United States Government rather than self-consumption by a contractor"; (c) plaintiff had paid to various vendors amounts stated as sales taxes and holds receipts therefor; (d) the claim for refund met all the requirements for filing a claim and the denial of the claim by the

board completed all administrative procedures necessary as prerequisite to this action in superior court; and (e) declaratory relief is the proper remedy to determine whether a tax collection procedure is unconstitutional.

Supporting his opposition to the motion for summary judgment plaintiff filed a counterdeclaration by E. D. Oliver in which he (a) recited his employment by plaintiff for the purpose of examining the amounts of sales taxes overpaid; (b) asserted that Donald Hennessey was incorrect in his declaration as to California case law relating to United States government contractors; (c) declared that it was not necessary to file supporting data for the refund claim before the board since there are "numerous lawsuits" now pending for refund by contractors selling fixtures and equipment to the United States and the board was aware of these lawsuits; (d) declared that the books and records of the various claimants were "readily available" to the board; (e) declared that the board had in "many cases" conducted audits of claimants without rendering a decision where the claim related to sales of fixtures in United States government contracts; (f) contended the board should hold all these claims in abeyance until litigation in the federal courts is finished, since the claimants have "an excellent chance to recover the amount claimed of tax overpaid"; (g) declared that he had personally examined invoices in plaintiff's files and found that "numerous items of tangible personal property later sold to the United States Government were procured with title passing outside the State of California" but sales tax had been paid—naming three; and (h) declared that a "detailed examination of all the records for the period would indicate numerous vendors who have transferred title to E. C. Barnes on property subsequently resold to the United States Government and at the time of the transaction collected a Use Tax on the tangible personal property which has not been reimbursed to E. C. Barnes." Attached to Oliver's declaration was a letter from the senior tax auditor of the board dated April 4, 1980 (over two years after this case was filed), in response to a request from Oliver that the board reconsider its decision. The letter pointed out that even if there were 37 cases pending (as apparently asserted by Oliver) which had "issues" related to this case, it was still the responsibility of a claimant to compile supporting fact data for a refund claim in verifiable form so that the staff could compile supporting data to present to the board, since "each claim [was] decided on a case by case basis." The letter again requested a compilation of "data needed to support your claim" and suggested that if such was forthcoming in 30 days the auditor would ask the board to reopen the claim.

With all the foregoing before it, the trial court granted the motion for summary judgment. The contentions of the parties used in their arguments on appeal are in essence the same as before the trial court, and we have concluded the trial court properly granted the motion.

■ The entire purpose of the procedural tool known as the motion for summary judgment is to rid the trial courts of cases in which there is no ascertainable issue of fact to be tried. (Code Civ. Proc., § 437c; *Tell* v. *Taylor* (1961) 191 Cal.App.2d 266, 269; [12 Cal.Rptr. 648]; *Estate of Kelly* (1960) 178 Cal.App.2d 24, 28 [2 Cal.Rptr. 634].) This includes declaratory relief actions and cases in which a procedural bar exists to the trial of any fact issue which *might* be present, and a defendant has shown such a bar as a defense in his affidavit by disclosing evidence of its existence. (See *Exchequer Acceptance Corp.* v. *Alexander* (1969) 271 Cal.App.2d 1, 11-12 [76 Cal.Rptr. 328]; *McHugh* v. *Howard* (1958) 165 Cal.App.2d 169, 174 [331 P.2d 674], *Weir* v. *Snow* (1962) 210 Cal.App.2d 283, 291-292 [26 Cal.Rptr. 868].) ■ Failure to exhaust administrative remedies is a jurisdictional procedural defect which bars court action. (See 2 Cal.Jur.3d, Administrative Law, § 262, pp. 506-510.) The doctrine of exhaustion of administrative remedies requires a party to use all available agency administrative procedures for relief and to proceed to a final decision on the merits by that agency before he may resort to the courts. (*McHugh* v. *County of Santa Cruz* (1973) 33 Cal.App.3d 533, 538-539 [109 Cal.Rptr. 149].) ■ The Supreme Court has emphasized the importance of the doctrine of exhaustion of administrative remedies as applied to actions involving sales and use taxes. It pointed out that matters of both law *and fact* must be first presented to the board for adjudication before resort to the courts so that the board may be afforded the opportunity to rectify any mistake in tax collection. The court pointed to various authorities for the proposition that the doctrine of exhaustion of administrative remedies "has received particular emphasis in tax enforcement cases." (*People* v. *West Publishing Co.* (1950) 35 Cal.2d 80, 88 [216 P.2d 441].)

We have before us a case of just this sort, in which the courts have said it is particularly important to exhaust all administrative remedies on the merits, both factual and legal. This was not done. Although ample opportunity was given to plaintiff by the board, he never responded to the board's request for factual documentation of his claim for tax refund. The board was therefore foreclosed from ruling on the factual

issues of plaintiff's case and was, in effect, asked by plaintiff to render what amounted to an advisory ruling or decision on various legal issues, including constitutional issues. The board properly refused and denied the claim—it had no other choice. Plaintiff then approached the superior court and in effect asked again for an advisory ruling on legal and constitutional issues. Although by declaration, plaintiff's agent indicated he had available certain undescribed invoices which would show overpayment of sales tax, he was not only vague and nonspecific, he was also too late since none of this material had been made available to the board.

Taken together, the pleadings, declarations and other documents before the trial court showed the court had no jurisdiction because of plaintiff's refusal to present the factual issues to the board so that it could render a decision on the merits of the tax refund claim. This failure to exhaust the administrative remedy available to plaintiff, being a jurisdictional bar to court proceedings, left no issues of fact (or of law) which could be decided by the trial court. (See *Aronoff* v. *Franchise Tax Bd.* (1963) 60 Cal.2d 177, 181 [32 Cal.Rptr. 1, 383 P.2d 409].) Under these circumstances, it was not incumbent upon the trial court to rule on any of plaintiff's allegations involving invalidity of any revenue and taxation provisions relating to sales or use taxes or any administrative regulations relating thereto, under either state or federal law. Likewise this court, under well-established principles of appellate law does not reach any such contentions raised by plaintiff. (*Stockton Theatres Inc.* v. *Palermo* (1956) 47 Cal.2d 469, 474 [304 P.2d 7]; see 5 Cal.Jur.3d, Appellate Review, § 487, pp. 130-132.)

The summary judgment is affirmed.

Paras, J., and Evans, J., concurred.

A petition for a rehearing was denied May 26, 1981, and appellant's petition for a hearing by the Supreme Court was denied July 8, 1981.