[Civ. No. 64788. Second Dist., Div. One. June 29, 1983.]

UNITED STATES STEEL CORPORATION et al.,
Plaintiffs and Appellants, v.
FRANCHISE TAX BOARD, Defendant and Respondent.

474

---

Iverson, Yoakum, Papiano & Hatch, David K. Robbins and Neil Papiano
for Plaintiffs and Appellants.

**COUNSEL**

Iverson, Yoakum, Papiano & Hatch, David K. Robbins and Neil Papiano
for Plaintiffs and Appellants.

John K. Van de Kamp, Attorney General, and Philip C. Griffin, Deputy Attorney General, for Defendant and Respondent.

---

**OPINION**

**HANSON (Thaxton), J.**—Petitioners United States Steel Corporation and Alside, Inc. have appealed the denial of their petition for a writ of mandate to compel respondent Franchise Tax Board (hereinafter the Board) to schedule a hearing within 30 days to consider petitioners' protest of certain additional tax assessments and to render a decision on the protest within 45 days of the hearing.[1]

■ The denial of the petition by the superior court was an appealable order, and thus the appeal lies. (Code Civ. Proc., § 1110; *Bloom* v. *Municipal Court* (1976) 16 Cal.3d 71, 74-75 [127 Cal.Rptr. 317, 545 P.2d 229]; 5 Witkin, Cal. Procedure (2d ed. 1971 and 1981 supp.) § 178, p. 3938.) We affirm the judgment.

### BACKGROUND OF THE DISPUTE

For more than 40 years California has taxed the income of particular corporations conducting business operations both within and without the state on the basis that the out-ot-state activities are so interrelated with the in-state activities that the entire business operations of the taxpayer are *unitary,* i.e., constituting a single economic unit.[2] California courts have upheld such determinations (*Butler Brothers* v. *McColgan* (1941) 17 Cal.2d 664, 667-668 [111 P.2d 334]; *Edison California Stores* v. *McColgan* (1947)

---

[1] Unless otherwise indicated, all statutory references herein are to the Revenue and Taxation Code (Code).

Pursuant to section 25664, after receiving notice of tax assessments, the taxpayer may file a written protest with the respondent Board; and, pursuant to section 25666, as it then read, "If a protest is filed the Franchise Tax Board shall reconsider the proposed assessment, and if the taxpayer has so requested in its protest, shall grant the taxpayer . . . an oral hearing." The section also stated that the Board's action on the protest after such oral hearing was final after notice and the expiration of 30 days.

We note that in 1982, the California Legislature amended the 25666 section by adding "The Franchise Tax Board may act on the protest in whole or in part. In the event the Franchise Tax Board acts on the protest in part only, the remaining part of the protest shall continue to be under protest until the Franchise Tax Board acts on that Part." (Amended by Stats. 1982, ch. 700, § 12 p. 2852.)

[2] The guidelines for making this determination are set forth in formal regulations of the Franchise Tax Board (Regs. 25101 and 25120 (b)) and in Cal. Admin. Code, tit. 18, §§ 25101, 25120 (b).

30 Cal.2d 472, 480 [183 P.2d 16]) and have approved the use of an apportionment formula set forth in section 25101. The apportionment formula (or accounting method) is applied to the taxpayer's *total* net income, employs three factors (tangible property, payroll and sales), and is designed to determine this state's fair share of taxes in an amount reasonably related to the state's contribution to the taxpayer's total profits. The formula, too, has survived judicial scrutiny (*Edison California, supra; Butler Brothers, supra; Superior Oil Co.* v. *Franchise Tax Bd.* (1963) 60 Cal.2d 406, 416-417 [34 Cal.Rptr. 545, 386 P.2d 33]; *Honolulu Oil Corp.* v. *Franchise Tax Bd.* (1963) 60 Cal.2d 417, 425 [34 Cal.Rptr. 552, 386 P.2d 40].)

Respondent Board is the state agency empowered to determine the income tax liability of these multistate or multinational corportions using the apportionment formula approach. (Code § 23001 et seq.) The Board has the authority to audit the operations of such corporations (Code, § 26423; *Franchise Tax Board* v. *Firestone Tire & Rubber Co.* (1978) 87 Cal.App.3d 878 [151 Cal.Rptr. 460]), and may request the Multistate Tax Commission to conduct such an audit.[3]

In the instant case, the Board requested the commission to conduct an audit of petitioner United States Steel for the years 1967 through 1976, and of petitioner Alside for the years 1970 through 1976. Petitioners have resisted characterization of their business operations as "unitary," and application of the apportionment formula; respondent Board, in conjunction with the commission, determined that petitioners possessed certain information necessary for completion of the audit, information which petitioners have failed to give the Board and the commission. Litigation concerning petitioners' refusal ensued in the federal district court in Idaho.[4]

On October 24, 1980, while the federal litigation was pending, the Board formally assessed petitioners, having calculated the asserted deficiency

---

[3]The Multistate Tax Commission was created pursuant to the Multistate Tax Compact, which has been adopted by most of the states including California (Code, § 30001 et seq.). The purpose of the compact is "to facilitate proper determination of State and local tax liability of multistate taxpayers, including the equitable apportionment of tax bases and settlement of apportionment disputes." (§ 30006.) The commission, too, has the power to audit the operations of such taxpayers, and compel the production of information necessary for the audit.

[4]In *Multistate Tax Com'n* v. *United States Steel Corp.* (1981) 659 F.2d 931, the Ninth Circuit Court of Appeals upheld the district court's determination that inspection of the withheld information could be made by the commission despite petitioner's contention that the information requested was proprietary in nature; it was held that this issue could be resolved by *in camera* inspection of the documents. We are told that upon remand, the petitioner moved to dismiss the case, did dismiss the case, and that the commission is now appealing the dismissal.

owed on available information. The assessment notices read, in part: "Income estimated based on available information because of your refusal to permit an audit to be completed. Assessment issued because of your refusal to further extend the statute of limitations for proposing assessments . . . ." The assessments totaled $8,816,011.

On December 18, 1980, petitioners protested the assessments pursuant to section 25664 (see, *ante,* fn. 1) and on or about January 28, 1981, respondent Board acknowledged petitioners' protest and advised it would be considered as soon as possible.

On March 24, 1981, respondent Board wrote petitioners suggesting that a hearing be deferred until resolution of the issues on appeal in the Idaho litigation. Petitioners rejected the suggestion in a letter to respondent on May 1, 1981, and on May 20, 1981, petitioned the court below for the writ of mandate commanding the Board to schedule a protest hearing within 30 days and render its determination within 45 days thereafter.

Respondent Board opposed the issuance of the writ, claiming that the scheduling of the hearing was a discretionary act, that petitioners had failed to exhaust their administrative remedies and that it was constitutionally impermissible to issue a writ of mandate to block the assessment or collection of taxes in California.

The trial court agreed with respondent Board and denied the writ of mandate, noting that petitioners had had the use of the monies in dispute—nearly $9 million dollars—at a time when the prevailing interest rate was higher than that which would be allowed the Board should the deficiency assessment ultimately be determined correct.[5]

On appeal, petitioners contend that they have furnished much information to respondent Board and the Commission, and that they are entitled to have the hearing provided by section 25666 on their protest of the estimated assessment as a matter of constitutional due process. They point out that had they not protested the estimated assessment, section 25665 of the Code provides that "If no protest is filed the amount of the additional tax proposed

---

[5]Section 25901b formerly provided in pertinent part, that "Interest upon the amount determined as a deficiency shall be assessed, collected and paid in the same manner as the tax at the rate of 12 percent per year . . . ." This section has also been amended, deleting 12 percent per year and substituting the "adjusted annual rate established pursuant to Section 19269 . . . ." (Sec. 19269 now provides for an interest rate tied to the prime rate of banks.)

to be assessed becomes final upon the expiration of the 60-day period provided for in Section 25664."[6]

Respondent Board contends here, as it did below, that the scheduling of the hearing is discretionary with the Board and therefore not subject to a writ of mandate; that petitioners had not exhausted their administrative remedies and were therefore precluded from bringing this action in superior court, and finally, that petitioners could not constitutionally utilize the writ of mandate to block assessment and collection of taxes.

## DISCUSSION

Much of petitioners' argument relative to their request for a hearing on their protest appears circuitous in nature and obfuscatory. What is clear is that the basic issue between respondent Board and petitioners concerning the additional taxes assertedly due appears to be the applicability of the apportionment formula to petitioners' corporate income during the years in question, which in turn is dependent upon a determination of whether petitioners are in fact engaged in business operations as a single economic unit, irrespective of state lines or corporate structure. That issue is not before us.

It is equally clear that petitioners, in resisting the complete audit by the Multistate Tax Commission, have refused to divulge certain information the commission states it needs, and have continued in their refusal. The issue concerning the specific information requested and withheld has been litigated in the federal courts and is not directly before us either.

What is before us is whether, given the circumstances outlined herein, the petitioners can, by a writ of mandate, in state superior court, now compel the Board to schedule a hearing on their protest, at a time when the Board still does not have information it says it needs to present a complete case in support of the claimed estimated deficiencies. In view of the 1982 amendment of section 25666, it is unlikely that the instant problem concerning a protest hearing under these sections of the Code will arise again, but we hold that these petitioners cannot compel a hearing on con-

---

[6]It seems clear that the Code provisions compel that once the assessment notice is received the taxpayer must protest in timely fashion so that the assessment does not become final without hearing and review. On the other hand, the Board must assess within the statute of limitations period or lose its right to do so. We note that in 1982, in one area at least, the Legislature amended the Code to provide that the four-year statute of limitations on notice of additional tax due is to be suspended during periods of time when the Board is prevented from making such an assessment in a case involving title 11 (bankruptcy) of the United States Code (see § 25663).

stitutional or other grounds when it is the petitioners who have, by their refusal to turn over the requisite information, made it impossible for the Board to hold a meaningful hearing on petitioners' protest.

## I. Discretion

It is often said that a writ of mandate will lie to "compel the performance of an act which the law specifically enjoins" (Code Civ. Proc., § 1085), sometimes termed a ministerial act or duty, but does not lie to compel discretionary action by a public body or official. (*People* ex rel. *Younger* v. *County of El Dorado* (1971) 5 Cal.3d 480, 490-491 [96 Cal.Rptr. 553, 487 P.2d 1193].) However, a distinction has been made between a public body or official's duty to exercise its discretion and to exercise it in a particular manner; in the first situation the writ may be available but in the latter situation it is not. In other words, mandate may compel the exercise of discretion but cannot dictate in what manner the discretion is exercised. (*Hollman* v. *Warren* (1948) 32 Cal.2d 351, 355 [196 P.2d 562]; *Carmona* v. *Division of Industrial Safety* (1975) 13 Cal.3d 303, 309-314 [118 Cal.Rptr. 473, 530 P.2d 161].)

Respondent Board contends that section 25666 authorizes it to schedule hearings on taxpayer protests in its discretion, and that in the instant case it did exercise that discretion by requiring petitioners to comply with its request for information prior to scheduling a hearing; it is further asserted that the Board cannot be compelled, by issuance of a writ of mandate, to exercise its discretion in another way.

We note that section 25666 provides that if the taxpayer so requests, the Board "*shall* grant the taxpayer, or its authorized representatives, an oral hearing . . . ." We deem the provision mandatory rather than discretionary, implicitly requiring the Board to schedule such hearing within a reasonable period of time and render its decision in timely fashion as well; we note that the recent amendment to the section does give the Board discretion to act on a protest "in part." We need not determine whether the Board's position in this case of deferring hearing until resolution of the information issue constituted an appropriate action pursuant to the statute, because petitioners, in our view, were properly denied the writ for more compelling reasons.

## II. Exhaustion of Remedies

As was explained in *Aronoff* v. *Franchise Tax Board* (1963) 60 Cal.2d 177, 181 [32 Cal.Rptr. 1, 383 P.2d 409], "[T]he courts of the state

are not available to the taxpayer prior to the exhaustion of administrative remedies before the administrative tribunals responsible for the administration of the tax and . . . the defect of failure to exhaust such remedies is jurisdictional . . . ." (See also *Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280 [109 P.2d 942, 132 A.L.R. 715].)

■ The real crux of the problem in the case at bench is that petitioners had not exhausted their administrative remedies prior to seeking relief by writ of mandate. The instant case is not unlike that of *Barnes* v. *State Bd. of Equalization* (1981) 118 Cal.App.3d 994 [173 Cal.Rptr. 742], where the taxpayer sought declaratory relief and refund of taxes assertedly overpaid by error; relief was denied because the taxpayer had refused, on the administrative level, to provide the Board of Equalization with information in support of the claim. The court stated, at page 1001, "Failure to exhaust administrative remedies is a jurisdictional procedural defect which bars court action. [Citation.] The doctrine of exhaustion of administrative remedies requires a party to use all available agency administrative procedures for relief and to proceed to a final decision on the merits by that agency before he may resort to the courts. [Citation.] The Supreme Court has emphasized the importance of the doctrine of exhaustion of administrative remedies as applied to actions involving sales and use taxes. It pointed out that matters of both law *and fact* must be first presented to the board for adjudication before resort to the courts so that the board may be afforded the opportunity to rectify any mistake in tax collection. The court pointed to various authorities for the proposition that the doctrine of exhaustion of administrative remedies 'has received particular emphasis in tax enforcement cases.' [Citation.] [¶] We have before us a case of just this sort, in which the courts have said it is particularly important to exhaust all administrative remedies on the merits, both factual and legal. This was not done. *Although ample opportunity was given to plaintiff by the board, he never responded to the board's request for factual documentation of his claim for tax refund. The board was therefore foreclosed from ruling on the factual issues of plaintiff's case* . . . ." (First italics in original text; last italics added.)

As in *Barnes*, petitioners have failed to provide the Commission and the Board with certain information these entities regard as essential to an accurate assessment of petitioners' tax liability. In the federal forum chosen by petitioners to litigate the issue of information production, the Commission prevailed in the first appeal. Under such circumstances, petitioners, who have still not produced the requisite information, cannot be said to have pursued administrative relief to final judgment; rather, they appear to be attempting to circumvent furnishing information at the administrative

level by applying to the courts for assistance. The trial court properly denied the writ of mandate sought by petitioners for this reason.

### III. ADEQUACY OF LEGAL REMEDY

In support of their petition for extraordinary relief, petitioners claimed that they had no "plain, speedy and adequate remedy, in the ordinary course of law," (Code Civ. Proc., § 1086), a basic requirement for issuance of a writ of mandate. The claim is without merit.

Code section 26078 provides: "If, with or after filing a protest or an appeal to the board, the taxpayer pays the tax protested before the Franchise Tax Board acts upon the protest or the board on the appeal, the protest or appeal shall be treated as a claim for refund or an appeal from the denial of a claim for refund filed under this article."

Traditionally, the only way a taxpayer may challenge the imposition of taxes in the courts is by seeking a *refund* of taxes paid under protest, rather than by attempting, by court action, to block the assessment or collection process before the taxes are paid. Perceiving that to allow prepayment challenge to taxation might undermine the effective functioning of government, the writers of the California Constitution provided, in section 32 of article XIII, that "No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax. After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, in such manner as may be provided by the Legislature." (And, with respect to bank and corporation taxes, Code § 26101 specifically declares that "No injunction or writ of mandate or other legal or equitable process shall issue in any suit, action, or proceeding in any court against this State or against any officer of this State to prevent or enjoin the assessment or collection of any tax under this part.")

The California Supreme Court had occasion recently to consider the constitutional provision in *Pacific Gas & Electric Co. v. State Bd. of Equalization* (1980) 27 Cal.3d 277 [165 Cal.Rptr. 122, 611 P.2d 463], wherein certain public utilities sought mandamus and declaratory relief to compel assessment adjustments *without* first paying the taxes declared due and seeking refunds thereof. The court held that section 32 clearly sets forth that state assessment and taxing procedures may not be challenged by any means (including extraordinary writs) but the statutory provisions for seeking relief after payment, by requesting refund.

It was explained, at 27 Cal.3d pages 283-284, that "[t]he policy behind section 32 is to allow revenue collection to continue during litigation so that essential public services dependent on the funds are not unnecessarily interrupted. [Citation.] 'Any delay in the proceedings of the officers, upon whom the duty is devolved of collecting the taxes, may derange the operations of government, and thereby cause serious detriment to the public.' [Citations.] To implement this policy, a specific statutory refund procedure has been provided for taxpayers whose property has been improperly assessed. (Rev. & Tax. Code, §§ 5096, 5140.) And to compensate a taxpayer who has been wrongfully required to pay, interest will be awarded on the refunded money. (*Id.* § 5150.) The utilities have attempted to circumvent this statutory scheme in an effort to obtain adjudication of their claims before payment. [¶] We hold that section 32 means what it says . . . ."

The *Pacific Gas and Electric* case is dispositive here, where petitioners have engaged in similar conduct. We note that at oral argument, the Attorney General appeared to discount the constitutional prohibition on prepayment challenge to taxes as a basis for denying relief. Our understanding of the law, however, is that the constitutional prohibition "means what it says."

Here petitioners' plain and speedy remedy at law was to pay the sum in dispute and then seek to reclaim it by seeking refund, as is provided by statute, on both the administrative level and in courts of law. This petitioners have not done. The trial court correctly denied petitioners relief.

The judgment is affirmed.

Spencer, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied July 21, 1983.