[No. A029879. First Dist., Div. One. Jan. 26, 1987.]

PARK 'N FLY OF SAN FRANCISCO, INC., et al., Plaintiffs and
Appellants, v.
CITY OF SOUTH SAN FRANCISCO et al., Defendants and
Respondents.

1204

---

## COUNSEL

Jonathan R. Bass, Edward M. Chen, Coblentz, Cahen, McCabe & Breyer, Alan E. Popkin, Michael H. Wetmore, Popkin, Stern, Heifetz, Lurie, Sheehan, Reby & Chervitz and Popkin & Stern for Plaintiffs and Appellants.

Robert K. Rogers, Jr., City Attorney, Robert J. Kasper and Kasper & Rogers for Defendants and Respondents.

OPINION

NEWSOM, J.—Appellant[1] brought an action for declaratory and injunctive relief challenging the validity and application of an ordinance enacted by the City of South San Francisco (hereafter referred to as respondent or the City) imposing a business license tax upon operators of commercial parking facilities. (Ord. No. 904-82, hereafter referred to as the ordinance.) After a court trial the ordinance was found "constitutional, valid and enforceable and ... applicable" to appellant.

The ordinance was enacted as a revenue measure in September of 1982, and became effective January 1, 1983. As originally adopted, it provided: "A. *Commercial Parking Facility Defined.* 'Commercial Parking Facility' means any privately owned or operated facility which provides, for any form of consideration, parking or storage for motor vehicles, motorcycles, trailers, bicycles or other similar means of conveyance for passengers or property. [¶] B. 'Operator' means any person who, as owner, lessee, employee, agent, or otherwise operates, maintains, manages, keeps, permits or allows to be operated, maintained, managed or kept any commercial parking facility in or upon any premises owned, leased, managed, operated or controlled by such person within the City. [¶] C. The license tax payable by operator shall be four percent (4%) of the gross receipts without deduction therefrom. [¶] D. This section shall become operative and the tax set forth herein shall be imposed on January 1, 1983." (§ 6.16.047 of the City of South San Francisco Mun. Code.) The definition of "commercial parking facility" was subsequently amended to exclude providers of parking spaces "rented appurtenant to the rental of residential dwelling units."

Prior to the enactment of the ordinance, appellant was first classified in 1977 by respondent under its business license tax scheme as an "airport parking and shuttle" service, and licensed as an "Automobile Parking" business beginning in 1980. Between 1977 and 1982, appellant paid yearly business taxes in amounts ranging from $540 to $700, or an average of $618 per year.

Appellant commenced operations in the City of San Francisco in 1969, listing its primary business in its articles of incorporation as "the construction, maintenance and operation of commercial parking lots, and in connection therewith to operate pick up and delivery services." Appellant owns a

---

[1]Appellants are Park 'N Fly of San Francisco, Inc., and Park 'N Fly, Inc., related corporations. They will hereafter be referred to as appellant or Park 'N Fly.

parking facility located in South San Francisco. For a fee, appellant's customers are permitted to park their cars in the parking facility and are escorted by way of appellant's "courtesy shuttle" to San Francisco International Airport. Appellant also provides a free shuttle service from the airport back to its parking facility. Fees are assessed according to the length of time the customer's car has been left with appellant. No separate fee is charged by appellant for the shuttle service, although after this suit commenced, appellant posted a sign stating that "[e]ach dollar of parking charge is broken down as follows [¶] Transportation service .65 [¶] Parking service .35 [¶] Total 1.00."

While appellant's parking facility is located in South San Francisco, 4.6 miles of the 6.9 mile round-trip from there to San Francisco International Airport takes place outside the city limits of respondent. Appellant also introduced evidence showing that nearly 63 percent of its business expenses are incurred for the transportation service it provides.

According to the ordinance, appellant is classified as a "commercial parking facility," and subjected to a tax of 4 percent of its gross receipts. For the calendar year 1983, appellant was assessed a tax of $78,988.67 under the ordinance. Only one other business in the City, Parking Company of America, was initially similarly classified under the ordinance. A third business was subsequently included by respondent within the classification "commercial parking facility" and taxed accordingly.

The evidence shows that respondent adopted the ordinance to increase its business tax revenue. Rather than exacting needed additional revenues from all businesses in the city, it was considered politically expedient to direct the tax only at commercial parking facilities such as that operated by appellant. The ordinance was intended as a "revenue equalizing" measure justified on the theory that commercial parking operations involve unimproved land which generates comparatively little property tax. According to City Manager C. Walter Birkelo, even after enactment of the ordinance, many other businesses located in the city pay greater taxes per acre than appellant. Mr. Birkelo testified: "My prime motivation was based on the fact that the Park 'N Fly type of operation yields significantly lower municipal revenues per acre for the type of zone property they occupy." As a result of the adoption of the ordinance, however, appellant has the highest business license tax assessment in the city, paying to the City approximately 16 percent of the total municipal business license tax revenues in 1983.

In October of 1982, appellant objected to its classification as a commercial parking facility and sought an exemption from the tax imposed under the

ordinance, raising many of the arguments presented in this appeal. Barry Lipton, respondent's director of finance, rejected appellant's objections to the ordinance, and this action ensued.

Appellant argues that the ordinance is constitutionally flawed, and also claims that it was incorrectly classified thereunder as a "commercial parking facility." Respondent submits that by failing to exhaust administrative remedies appellant is precluded from challenging its *classification* in this court. Respondent relies upon the well established rule that "the courts of the state are not available to a taxpayer prior to the exhaustion of administrative remedies before the administrative tribunals responsible for the administration of the tax . . . ." (*Aronoff* v. *Franchise Tax Board* (1963) 60 Cal.2d 177, 181 [32 Cal.Rptr. 1, 383 P.2d 409]; see also *United States Steel Corp.* v. *Franchise Tax Board* (1983) 144 Cal.App.3d 473, 479-480 [192 Cal.Rptr. 677].) Failure to exhaust administrative remedies is a jurisdictional procedural defect which bars court action. (*Id.,* at p. 480; *Barnes* v. *State Bd. of Equalization* (1981) 118 Cal.App.3d 994, 1001 [173 Cal.Rptr. 742].)

Appellant seeks to avoid application of the exhaustion of administrative remedies doctrine by arguing that respondent has not provided an administrative mechanism for raising constitutional challenges to the ordinance. The ordinance states that "a licensee or an applicant for a license" aggrieved by a classification assignment "may apply to the collector for reclassification." (Ord., § 6.04.110.) The collector then must investigate the application for reclassification and thereafter "notify the applicant of the action taken on the [such] application . . . ." (*Ibid.*) An appellate process is also provided: the applicant may, within 15 days, request a hearing on the collector's decision before the city manager. (Ord., § 6.04.120.)

It is clear to us that appellant failed to take advantage of the administrative procedure provided by the ordinance. While appellant sent a letter to respondent objecting to its reclassification as a commercial parking facility and raising the constitutional issues presented to this court, it neither filed a formal application for reclassification nor availed itself of the right to appeal to the city manager.

The doctrine of exhaustion of administrative remedies requires a party to use all available administrative procedures for relief and to proceed to a final decision on the merits before the appropriate agency before resorting to the courts. (*People* v. *West Publishing Co.* (1950) 35 Cal.2d 80, 88 [216 P.2d 441]; *Barnes* v. *State Bd. of Equalization, supra,* 118 Cal.App.3d 994, 1001.) If provided, appellate procedures must be pursued or court

action will be barred. (*Patane* v. *Kiddoo* (1985) 167 Cal.App.3d 1207, 1212-1213 [214 Cal.Rptr. 9]; *McHugh* v. *County of Santa Cruz* (1973) 33 Cal.App.3d 533, 538-539 [109 Cal.Rptr. 149].) ■ Such a rule seeks to relieve overburdened courts from the obligation of considering cases where effective administrative remedies are provided. (*Atari Inc.* v. *State Bd. of Equalization* (1985) 170 Cal.App.3d 665, 673 [216 Cal.Rptr. 267]; *Patane* v. *Kiddoo, supra,* 167 Cal.App.3d at p. 1214.)

■ It is the taxpayer's burden to establish that administrative remedies have been exhausted, or that facts exist which excuse that requirement. (*Westinghouse Elec. Corp.* v. *County of Los Angeles* (1974) 42 Cal.App.3d 32, 37 [116 Cal.Rptr. 742].) ■ As to the reclassification issue, we conclude that appellant has failed to satisfy its burden of proof. Appellant elected to file a court action without first seeking reclassification according to the procedure provided by the ordinance. ■ That administrative procedures may or even probably would have been unavailing does not excuse appellant's obligation to pursue them. (*Westinghouse Elec. Corp., supra,* at p. 41.) ■ Had appellant pursued its administrative hearing and appeal rights, this action may have been unnecessary. For such reasons, appellant cannot complain to this court that it was erroneously classified as a commercial parking facility under the ordinance. (*Stenocord Corp.* v. *City etc. of San Francisco* (1970) 2 Cal.3d 984, 988 [88 Cal.Rptr. 166, 471 P.2d 966]; *Barnes* v. *State Bd. of Equalization, supra,* 118 Cal.App.3d 994, 1002; *Westinghouse Elec. Corp.* v. *County of Los Angeles, supra,* 42 Cal.App.3d at pp. 41-42; *Western Title Guaranty Co.* v. *County of Stanislaus* (1974) 41 Cal.App.3d 733, 742 [116 Cal.Rptr. 351].)

Nor is appellant spared compliance with the exhaustion doctrine by the exception recognized where a tax ordinance is penal in nature and an injunction against an unconstitutional tax is necessary to prevent irreparable injury. (*John Tennant Memorial Homes, Inc.* v. *City of Pacific Grove* (1972) 27 Cal.App.3d 372, 379 [103 Cal.Rptr. 215].) Appellant's reclassification contention raises no constitutional issue; also, appellant has paid the assessed tax under protest, and thus will not incur criminal penalties under the ordinance if we deny it the right to contest its classification in this proceeding.[2]

■ The exhaustion doctrine does not, however, preclude consideration of appellant's constitutional objections to the ordinance, which provides the taxpayer with no mechanism either for challenging its essential validity or

---

[2]The ordinance makes any violation of its provisions a misdemeanor (§ 6.04.180) and subjects the violator to penalties (§§ 6.12.150, 6.04.170).

raising constitutional questions. Where no forum or administrative remedy is afforded for the issues raised, recourse to the local administrative agency is not required before initiation of court action. (*Star-Kist Foods, Inc.* v. *Quinn* (1960) 54 Cal.2d 507, 511 [6 Cal.Rptr. 545, 354 P.2d 1]; *TRIM, Inc.* v. *County of Monterey* (1978) 86 Cal.App.3d 539, 544 [150 Cal.Rptr. 351]; *Pacific Motor Transport Co.* v. *State Bd. of Equalization* (1972) 28 Cal.App.3d 230, 237 [104 Cal.Rptr. 558].) Where, as here, the administrative agency is not empowered to correct the situation from which judicial relief is sought, resort to the courts need not be preceded by an administrative action. (*Knoff* v. *City etc. of San Francisco* (1969) 1 Cal.App.3d 184, 199 [81 Cal.Rptr. 683].) Hence, only appellant's claim of improper reclassification is barred by the exhaustion doctrine.

The first of appellant's constitutional challenges to the ordinance is that it improperly fails to "apportion the gross receipts upon which the tax is imposed to reflect only the proportion of the taxed activity actually carried on within the taxing jurisdiction." Appellant submits that respondent "has *no* mechanism or procedure for any apportionment," and for that reason asks us to "declare the Ordinance unconstitutional and mandate that [respondent] refund" to it all tax payments made in accordance with the dictates of the ordinance.

Our high court has declared that "[t]he requirements of due process and equal protection compel an apportionment of receipts attributable to the business carried on within and without the city. [Citations.]" (*Volkswagen Pacific, Inc.* v. *City of Los Angeles* (1972) 7 Cal.3d 48, 58 [101 Cal.Rptr. 869, 496 P.2d 1237].) In the seminal case of *City of Los Angeles* v. *Shell Oil Co.* (1971) 4 Cal.3d 108, 124 [93 Cal.Rptr. 1, 480 P.2d 953] (hereafter sometimes referred to as *Shell Oil*), the court declared: "[I]n spite of the absence of a specific 'commerce clause' in our state Constitution, other provisions in that Constitution—notably those provisions forbidding extraterritorial application of laws and guaranteeing equal protection of the laws . . .—combine with the equal protection clause of the federal Constitution to proscribe local taxes which operate to unfairly discriminate against intercity businesses by subjecting such businesses to a measure of taxation which is not fairly apportioned to the quantum of business actually done in the taxing jurisdiction. On the other hand, those constitutional principles do not *prohibit* local license taxes upon businesses 'doing business' both within and outside the taxing jurisdiction; as long as such taxes are apportioned in a manner by which the measure of tax fairly reflects that proportion of the taxed activity which is actually carried on within the taxing jurisdiction, no constitutional objection appears. However, and conversely, no measure of apportionment

can satisfy the constitutional standard if the measure of tax is made to depend upon a factor which bears no fair relationship to the proportion of the taxed activity actually taking place within the taxing jurisdiction."

■ "The taxpayer who challenges a method of apportionment of a local tax bears the burden of showing that extraterritorial values are being taxed." (*Volkswagen Pacific, Inc.* v. *City of Los Angeles, supra,* 7 Cal.3d 48, 58.) " 'One who attacks a formula of apportionment carries a distinct burden of showing by "clear and cogent evidence" that it *results* in extraterritorial values being taxed.' " (*City of Los Angeles* v. *Shell Oil Co., supra,* 4 Cal.3d 108, 126.)

■ Appellant directs our attention to the following factors in arguing that the ordinance has an impermissible extraterritorial effect: "Fully sixty-six percent (66%) of the transportation phase of Park 'N Fly's business activity takes place outside the limits of the City. Sixty-three percent (63%) of the expenses incurred by Park 'N Fly are directly attributable to the transportation phase of its business." Appellant complains that a "substantial portion" of its business activities necessary for the production of revenue "take place wholly outside the limits of the City," yet its gross receipts are taxed by the ordinance without apportionment for such activities.

To support its claim that the ordinance lacks the requisite mechanism for apportionment, appellant relies primarily upon *Shell Oil, supra,* 4 Cal.3d 108, where the court found invalid a municipal business license tax imposed upon total gross receipts derived from wholesale sales of gasoline delivered from the oil company's in-city bulk terminal to retailers outside the city. The City's apportionment formula, under which *all* receipts from sales of goods "which are in any manner attributable" to in-city business functions and which are shipped from or into the City are subject to tax, even if "a substantial. . .—or even the greater portion of—the selling activities which produced that receipt took place outside the City," was found to have " 'no relation to the taxable event occurring in [the City] or the quantum of business there carried on.' " (*Id.,* at p. 125.) The court concluded that the tax was "violative of . . . constitutional principles . . . because it renders the measure of tax dependent on a factor (i.e., the situs of the goods upon shipment) which bears no relationship to the proportion of the taxed activity (i.e., the business of selling) which actually takes place within the taxing jurisdiction and, under the facts of this case, operates to reach gross receipts other than those which

are 'directly attributable to . . . selling activities carried on in the City.' " (*Id.,* at p. 127.)[3]

Under *Shell Oil* and its progeny, a tax is invalid if it bears no relationship to the quantum of the taxable event actually transacted in the taxing city. (See *Volkswagen Pacific, Inc.* v. *City of Los Angeles, supra,* 7 Cal.3d 48, 59; *General Motors Corp.* v. *City of Los Angeles* (1971) 5 Cal.3d 229, 244 [95 Cal.Rptr. 635, 486 P.2d 163]; *City of San Jose* v. *Ruthroff & Englekirk etc. Engineers, Inc.* (1982) 131 Cal.App.3d 462, 468-469 [183 Cal.Rptr. 391]; *Brabant* v. *City of South Gate* (1977) 66 Cal.App.3d 764, 771 [136 Cal.Rptr. 150].) The focus is upon the relationship between the taxable event or activity and the tax imposed. The objective of the apportionment rule is to avoid multiple taxation of a single transaction, which imposes an unconstitutional burden upon those engaged in intercity business. (*City of San Jose* v. *Ruthroff & Englekirk etc. Engineers, Inc., supra,* 131 Cal.App.3d at p. 469; *Brabant* v. *City of South Gate, supra,* 66 Cal.App.3d at p. 771.)

Our analysis of the subject ordinance leads us to conclude that the source of the tax it imposed is not in extraterritorial business activities. The taxable event is the provision of a parking facility for consideration; the tax is imposed upon gross receipts derived from operation of such a business within the City. In contrast to *Shell Oil,* appellant does not engage in selling activities which generate income outside the confines of the City. Those who use appellant's services leave their vehicles at appellant's parking facility in the City, then return there and pay appellant solely on the basis of the length of time their vehicles have been left with appellant. No taxable event occurs outside the territorial limits of the City.

---

[3]See also *Ferran* v. *City of Palo Alto* (1942) 50 Cal.App.2d 374 [122 P.2d 965], upon which the court in *Shell Oil* relied, as does appellant. In *Ferran,* the city imposed a license tax on the business of laundering and taking orders for laundering — the tax being measured by the number of employees at the plant or place of laundering. Plaintiff laundry maintained its plant, where 35 persons were employed, in San Francisco but had customers thoughout the Bay Area, including Palo Alto, who were serviced by truck on a pick-up and delivery basis. Of a gross annual income amounting to approximately $60,000 only about $900 was derived from Palo Alto business, and plaintiff contended that the application of the license tax to it on the basis of its total number of employees was unconstitutional. The Court of Appeal agreed holding that "the ordinance is void as an unlawful and unreasonable discrimination against and denial of the equal protection of the law to laundries doing their laundering and having their plants outside of Palo Alto, but deriving some of their business from within said city. It also unlawfully discriminates against those engaged in Palo Alto in the business of taking orders for laundering or washing to be done by laundries maintaining their washing plants and doing their business outside the city. The business of such solicitors may be an independent calling having no logical connection whatsoever with the number of employees at the plant where the washing is done." (*Id.,* at p. 383.)

That appellant provides free transportation service to its customers, that a part, at least, of such service takes place outside the City, and that appellant incurs expenses in doing so, does not alter the essential character of the taxable event. No activity subject to tax occurs beyond the City limits. Only gross receipts from operation of a commercial parking facility within the City are taxed. Multiple taxation is thus avoided: appellant does not earn income from an intercity transportation service upon which another municipality might impose a tax.

*Hospital Medical Collections, Inc.* v. *City of Los Angeles* (1976) 65 Cal.App.3d 46 [135 Cal.Rptr. 147], illustrates the distinction between the case before us and those in which taxes were found invalid. There, the city sought to tax the gross receipts of corporate collection agencies without recognizing a deduction for commissions retained by independent collection agencies located outside the city to whom the debt had been assigned. While acknowledging the rule stated in *Shell Oil* that business taxes must be "fairly apportioned to the quantum of business actually done in the taxing jurisdiction," the court concluded: "In the instant case, however, we are dealing neither with manufacture nor sale, but with the providing of a service. The contract of assignment—which generates the subsequent activity—occurs in the City of Los Angeles, and the ultimate conclusion of the collection transaction also occurs in the city. The presence of intervening extraterritorial elements between the beginning and concluding activities, does not make for nontaxability under those circumstances, nor are the extra-territorial elements so substantial as to require apportionment. [Citation.]" (*Id.,* at pp. 54-55.)

And in *City of Los Angeles* v. *London Towne Livery Service, Ltd.* (1979) 97 Cal.App.3d 814 [159 Cal.Rptr. 94], a municipal tax was imposed upon "persons engaged in the business of transporting of passengers for hire at the rate of 90 cents per day for each vehicle used," whether the transporting occurred "entirely within the City or on trips originating or terminating within the City." (*Id.,* at p. 816.) The court found no discrimination against intercity carriers and no unconstitutional tax on intercity activity. (*Id.,* at pp. 819-820.)

Nor does the subject ordinance impose an extraterritorial tax upon inter-city businesses. Instead, the challenged tax applies only to businesses which provide parking within the city for consideration, and is calculated according to a percentage of gross receipts rather than a fixed rate. We find no constitutional flaw in the failure of the ordinance to apportion the tax in the manner proposed by appellant.

(9a)  Appellant also argues that the ordinance violates equal protection principles by exacting from commercial parking facilities an "unconscionably high share of the City's business license taxes . . . ." In so arguing, appellant observes that the ordinance was drafted to apply to only two enterprises, and increased respondent's business tax revenues by approximately 50 percent from only two local commercial parking facilities operating in the City. In the aftermath of the ordinance, appellant paid 16 percent of the total business license tax revenues collected by respondent.

■  Our consideration of the claim that the tax is confiscatory and discriminatory proceeds from the established rule that " ' "tax classifications carry a presumption of constitutionality which can be overcome only by the most explicit demonstration that the classification fosters hostile and oppressive discrimination against particular persons or groups." (*Arp* v. *Workers' Comp. Appeals Bd.* (1977) 19 Cal.3d 395, 403 . . . .)' " (*National Independent Business Alliance* v. *City of Beverly Hills* (1982) 128 Cal.App.3d 13, 26 [180 Cal.Rptr. 59].) "[T]he party who challenges the constitutionality of a legislative classification scheme in a tax statute bears a very heavy burden. . . . 'Tax statutes are generally not subjected to close scrutiny, and distinctions can be justified on the basis of administrative convenience and promotion of legitimate state interests. [Citation.]' " (*Cohan* v. *Alvord* (1984) 162 Cal.App.3d 176, 181-182 [208 Cal.Rptr. 421].) Moreover, "a municipality may impose license fees at differing rates upon different classes provided the classification created is reasonable." (*United Business Com.* v. *City of San Diego* (1979) 91 Cal.App.3d 156, 178 [154 Cal.Rptr. 263].) ) "No constitutional rights are violated if the burden of the license tax falls equally upon all members of a class, though other classes have lighter burdens or are wholly exempt, provided that the classification is reasonable, based on substantial differences between the pursuits separately grouped, and is not arbitrary." (*Fox etc. Corp.* v. *City of Bakersfield* (1950) 36 Cal.2d 136, 142 [222 P.2d]; *City of Berkeley* v. *Oakland Raiders* (1983) 143 Cal.App.3d 636, 640 [192 Cal.Rptr. 66], cert. den. 464 U.S. 939 [78 L.Ed.2d 316, 104 S.Ct. 351].) Generally, a business license tax comports with equal protection standards " 'if the distinction rests upon a rational basis, and it must be presumed to rest on that basis if there is any conceivable state of facts which would support it.' " (*United Business Com.* v. *City of San Diego, supra,* 91 Cal.App.3d 156, 178; *City of San Jose* v. *Donohue* (1975) 51 Cal.App.3d 40, 45 [123 Cal.Rptr. 804].)

■  Undebatably, the challenged ordinance resulted in a dramatic increase in its business license tax rates. But "[s]uch evidence alone of tax increases, even enormous increases, is not evidence of a lack of equal

protection." (*National Independent Business Alliance* v. *City of Beverly Hills, supra,* 128 Cal.App.3d at pp. 26-27.) Nor can we find the ordinance discriminatory simply because appellant has thereby been subjected to a more onerous tax burden than other businesses. (*Westfield-Palos Verdes Co.* v. *City of Rancho Palos Verdes* (1977) 73 Cal.App.3d 486, 495 [141 Cal.Rptr. 36].)

Appellant's argument that the tax is confiscatory is even less convincing (cf. *Fox etc. Corp.* v. *City of Bakersfield, supra,* 36 Cal.2d 136, 139), since the record clearly shows that notwithstanding a tax of 4 percent of its gross receipts appellant's business continues to be profitable. As observed in *City of Berkeley* v. *Oakland Raiders, supra,* 143 Cal.App.3d 636, 640: "[T]here is no requirement that the amount of the tax be reasonable—merely that it not be confiscatory nor prohibitory." Appellant has not presented convincing evidence that the ordinance exacts a tax which falls into either of these latter categories. (*Ibid.*)

The classification created by the ordinance must of course rest upon rational underpinnings. (*Bunker Hill Associates* v. *City of Los Angeles* (1982) 137 Cal.App.3d 79, 83 [186 Cal.Rptr 719].) Its origin is described by respondent as not merely the need for new revenue sources for the City, but also the legislative conclusion that a more substantial tax on commercial parking facilities, which pay lower taxes per acre of property occupied in the City than other enterprises, was necessary to equalize the tax burden among businesses. Equalization of the overall tax burden among various municipal businesses was a proper and rational basis for the ordinance. (*Bunker Hill Associates* v. *City of Los Angeles, supra,* 137 Cal.App.3d 79, 85; *National Independent Business Alliance* v. *City of Beverly Hills, supra,* 128 Cal.App.3d 13, 27.)

Appellant's contention that respondent singled out Park 'N Fly and one other commercial parking facility among all the businesses in the City for discriminatory tax treatment is unsupported by the record. According to undisputed testimony offered by respondent, the ordinance was directed at all similarly situated businesses,[4] for fiscal and equalization purposes which, we have concluded, satisfy equal protection requirements. Classification of various business enterprises based upon reasonable distinctions was within respondents' broad legislative discretion. (*Fox etc. Corp.* v. *City of Bakersfield, supra,* 36 Cal.2d 136, 143; *National Independent Business Alliance* v. *City of Beverly Hills, supra,* 128 Cal.App.3d 13, 27; *Helton* v. *City of Long*

---

[4]When it was discovered that a third "commercial parking facility" was operating in the City, respondent applied the ordinance to that business, thereby demonstrating its intent to impose the tax on all similarly situated enterprises.

*Beach* (1976) 55 Cal.App.3d 840, 845 [127 Cal.Rptr. 737].) Appellant has failed to prove a denial of equal protection.

Appellant complains that the ordinance is "a subterfuge for a prohibited per acre tax," rather than a business license tax. Reasoning from this premise, appellant insists that as a "general law city" respondent had no authority under article XI, section 12[5] of the California Constitution to impose a parking tax upon "each individual who parks his car in a parking lot." Appellant argues that respondent has attempted to "circumvent this prohibition" by enacting a parking tax disguised as a business license tax.

The substance, rather than the form or label, of a tax will determine its character. (*Weekes* v. *City of Oakland* (1978) 21 Cal.3d 386, 392 [146 Cal.Rptr. 558, 579 P.2d 449].) The subject ordinance, which exacts a tax based upon gross receipts earned by the commercial parking facility, is directed not at those who use appellant's parking facility, but rather at the business itself. A business or occupation tax has been defined as a tax upon the privilege of doing business within the taxing jurisdiction, and is often measured by gross receipts. (*Id.,* at p. 394; *Ainsworth* v. *Bryant* (1949) 34 Cal.2d 465, 474 [211 P.2d 564].) The tax imposed by the challenged ordinance falls squarely within the definition of a business tax; that Park 'N Fly may recoup the tax by passing on the cost to its customers does not alter the fundamental nature of its impact.

Appellant also argues that the ordinance "produces a forbidden tax" on interstate commerce (U.S. Const., art. 1, § 8; 49 U.S.C. § 1513; Cal. Const., art. XI, § 7, Gov. Code, § 37101), in that Park 'N Fly's customers are air travelers, many of whom use San Francisco International Airport for interstate business flights. The ordinance imposes a tax upon Park 'N Fly that may be passed on to such customers in the form of "modest" rate increases, thus producing a forbidden effect on interstate commerce.

The contention is meritless. Under the test announced by the United States Supreme Court in *Complete Auto Transit, Inc.* v. *Brady* (1977) 430 U.S. 274, 279 [51 L.Ed.2d 326, 331, 97 S.Ct. 1076], a local tax does not offend the commerce clause if it is applied to an activity which has a substantial nexus with the taxing jurisdiction, is fairly apportioned, does not

[5]Former article XI, section 12 read: "Except as otherwise provided in this Constitution, the Legislature shall have no power to impose taxes upon counties, cities, towns or other public or municipal corporations ... but may, by general laws, vest in the corporate authorities thereof the power to assess and collect taxes for such purposes." This constitutional provision was repealed, but in substance is now found in article XIII, sections 1, 3(b), and 24.

discriminate against interstate commerce, and is reasonably related to services provided by the taxing jurisdiction. (See also *Commonwealth Edison Co.* v. *Montana* (1981) 453 U.S. 609, 617 [69 L.Ed.2d 884, 894, 101 S.Ct. 2946].) We have already observed that the tax imposed by the ordinance meets the substantial nexus and fair apportionment standards. It is also fairly related to the privilege of doing business in the City, and, finally, the burden it imposes upon interstate commerce is so indirect and insubstantial that it cannot be characterized as discriminatory. (*Barker Bros., Inc.* v. *Los Angeles* (1938) 10 Cal.2d 603, 609 [76 P.2d 97].) No impermissible burden upon interstate commerce has been established.

The judgment is affirmed. Costs on appeal are awarded to respondent.

Racanelli, P. J., and Elkington, J., concurred.

Appellants' petition for review by the Supreme Court was denied April 15, 1987.