Filed 10/4/21; certified for publication 10/22/21 (order attached)

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| HOST INTERNATIONAL, INC., et al.,<br><br>        Petitioners and Appellants,<br><br>v.<br><br>CITY OF OAKLAND, et al.<br><br>        Respondents. | A160692<br><br>(Alameda County Super. Ct. No. RG19010616) |

Host International, Inc. and HMSHost Corporation (collectively "Host") filed a petition for a writ of administrative mandate challenging a decision by the City of Oakland Tax Board of Review ("Board") that held it liable for $371,195.40 in business taxes, penalties, and interest based on failure to pay business tax on its subleasing activities. In this appeal from the trial court's denial of the petition, Host contends that the Board's determination that it was engaged in subleasing is unsupported by substantial evidence. Further, Host asserts that, even assuming it was engaged in subleasing, the amount of its tax liability must be reduced because subleasing constituted less than 20 percent of its receipts and the statute of limitations has run for certain years. Because we conclude Host's contentions lack merit, we affirm.

1

## BACKGROUND

### A.

Under the Oakland Municipal Code, businesses operating in Oakland must obtain a business tax certificate and pay business license taxes each year. (Oakland Mun. Code, §§ 5.04.020, 5.04.070, 5.04.080, subd. (A).) The amount of business tax liability depends on the type of activities in which the business is engaged. (See *id.*, §§ 5.04.290 - 5.04.500.) A separate business tax certificate is required for each activity of the business unless the activity comprises less than 20 percent of the total gross receipts of the business. (*Id.*, § 5.04.040.) Thus, a business that engages in both retail sales and leasing of commercial property must obtain separate certificates for each unless the exception applies. (See *id.*, §§ 5.04.290, 5.04.430, subd. (A).) City of Oakland ("City") tax authorities determine the appropriate business tax classifications based on the information reported by the taxpayer. (*Id.*, §§ 5.04.090, subd. (A), 5.04.110, 5.04.120.)

### B.

Host held a permit approved by the Port Department of the City of Oakland ("Port") to occupy space and operate food, beverage, retail, and duty-free concessions at Oakland International Airport. In exchange for the rights granted under the permit, Host was required to pay monthly rent to the Port. In addition to authorizing retail activities at the airport, the permit authorized Host to sublease and assign its space to other parties with the consent of the Port.

The permit also required that Host comply with the Port's non-discrimination policy, as well as with United States Department of Transportation regulations concerning a federal program to ensure

2

nondiscrimination and remove barriers to participation in airport concessions by business enterprises owned by socially or economically disadvantaged individuals. (See 49 C.F.R. § 23.1.) In addition, the permit required Host to report to the Port the gross receipts of disadvantaged business enterprises listed in Exhibit 9 to the permit. Exhibit 9 identifies several of Host's suppliers and subtenants as disadvantaged business enterprises.

Host entered into a second permit with the Port to pay rent in exchange for the ability to occupy space and conduct business at Oakland International Airport. The second permit also authorized subleasing with the consent of the Port and required compliance with nondiscrimination policies.

### C.

In 2015, based on an audit of Host's financial records, a City tax auditor determined that Host owed the City unpaid business taxes, penalties, interest, and fees for rental income from subleases between 2006 to 2015. Host had obtained a business certificate and paid business tax for its retail activities, but not for subleasing. The auditor reported that the liability calculations were based on estimates of Host's gross receipts from subleases because the "[t]axpayer did not provide requested information."

Host unsuccessfully appealed the audit results to City auditors, asserting that it was engaged only in retail sales (not commercial subleasing), that the 20 percent exception applied, and that the City could not collect some of the back taxes because of the statute of limitations. Host then appealed to the Board, which upheld the determination of tax liability in the amount of $371,195.40.

3

## DISCUSSION

In addressing Host's arguments on appeal, "[w]e review the factual basis behind the agency's order or decision for 'substantial evidence in ... light of the whole record.' " (*Akella v. Regents of University of California* (2021) 61 Cal.App.5th 801, 813-814 (*Akella*); see also Code Civ. Proc., § 1094.5, subd. (c).) To the extent Host's contentions raise questions of law, we review those questions de novo. (*Akella, supra,* 61 Cal.App.5th at p. 815.) Applying these standards, we affirm the trial court's denial of Host's petition.

### A.

Host contends that the Board's conclusion that it was engaging in subleasing activity is unsupported by substantial evidence because the subleases were required by federal law and Host did not reap a profit. We conclude the Board correctly determined that Host was engaged in subleasing.

It is undisputed that Host entered into agreements to rent space to subtenants and received rent payments from them. In the administrative proceedings, Host conceded that it leased space at the airport, that it sublet some of that space to other businesses, that it collected rent from the subtenants, and that it booked this revenue as rental income. It provided a spreadsheet showing how much rent it collected from its subtenants between 2006 and 2016. These facts alone provide substantial evidence that Host engaged in subleasing.

Host argues that it should not be classified as a sublessor because it only entered into subleases to comply with federal law and the terms of its City permits. However, Host has failed to point to any provision of either federal law or the permits that mandated its subleasing

4

activities. In a footnote, Host cites 49 Code of Federal Regulations part 23, a detailed federal regulation that has more than 30 subparts without identifying any particular provision. The rule requires recipients of federal funds to identify aspirational goals for disadvantaged businesses to participate in airport concessions, which certainly could include subleases, but it imposes no quotas and we are not aware of any sublease mandate. (See 49 C.F.R. §§ 23.25, 23.41, 23.57, 23.59, 23.61.) The permit requires Host to comply with the federal rule but does not itself require the subleases. At the Board hearing, counsel for Host conceded that "I can't point you to a legal document where it says" that Host is required to rent space to businesses owned by disadvantaged individuals.

Host also asserts that its subleasing activities were not taxable as business activity because it did not enter into the subleases for the purpose of obtaining any gain, benefit, or advantage from them. Host contends that its subleases therefore do not meet the definition of a taxable "business," which the City broadly defines as "any activity, enterprise, profession, trade, or undertaking of any nature conducted with the object of gain, benefit, or advantage, whether direct or indirect, to the taxpayer or to another or others." (Oakland Mun. Code, § 5.04.030.) Host reasons that it only engaged in subleasing because the City made it a condition of the airport concession contract, not because Host hoped to obtain a benefit from subleasing. But even assuming Host were correct that the City made the subleases a requirement, that would simply mean that, as Host explained at the Board hearing, the subleases were part of the cost of doing business at the airport. No subleases, no airport concession contract.

5

Further, Host failed to place into the record any evidence demonstrating that it did not profit from subletting. Notably, the second permit expressly allowed Host to charge subtenants rent of up to 125 percent of the amount it paid to the Port for the same space. The City was unable to verify whether Host made a profit or charged a fee because Host did not cooperate with the audit.

Finally, regardless of whether Host earned a profit from subleasing, business license taxes like Oakland's are based on gross receipts – not income or profit. (See, e.g., *Weekes v. City of Oakland* (1978) 21 Cal.3d 386, 393-394 (*Weekes*).) A business tax is "a tax upon the privilege of doing business within the taxing jurisdiction." (*Park 'N Fly of San Francisco, Inc. v. City of South San Francisco* (1987) 188 Cal.App.3d 1201, 1215.) "[I]t is the privilege, not the income generated by its exercise, that is the direct and immediate subject of the tax." (*Weekes*, *supra*, 21 Cal.3d at p. 397.) Whether Host's subletting activities are profitable or not is thus irrelevant to its business tax liability.

## B.

Host also challenges the amount of its tax liability, arguing that an exception for business activity that comprises less than 20 percent of its gross receipts would eliminate its liability for the years 2006 through 2009. In addition, Host contends that a three year statute of limitations reduces its liability. We reject both arguments.

**1.**

Host relies on Oakland Municipal Code section 5.04.040, which provides that a separate certificate is not required for a business activity that "produced less than twenty percent (20%) of the total gross receipts" for the business in a given year.  However, to verify the applicability of this exception, the business must report its activities and receipts to the City.  (See, e.g., Oakland Mun. Code, § 5.04.090, subd. (A) [requiring that taxpayers conducting business in the city file annual statements with the Business Tax Section providing information "required by the business tax section to enable it to administer the provisions of this chapter"].)  Here, although Host held a business certificate for retail activities and reported those activities, Host does not dispute that it failed to report its receipt of rental payments from subleasing activity to the City.

Neither is there any dispute that, when the City audited Host in 2015, Host failed to cooperate and failed to provide requested documentation to the City.  Because Host failed to provide the information requested for the audit, the City relied on estimates of gross receipts from Host's subletting activities, as authorized under the Oakland Municipal Code.  (See Oakland Mun. Code, § 5.04.650, subd. (A) ["If any person fails to file a declaration as required by this chapter, the Director of Finance shall in the exercise of reasonable discretion make an estimate of the amount of the gross receipts or other measure of tax applicable . . . based upon any factual information which is in the Director of Finance's possession"].)  The City advised Host that if it disagreed with its estimates of its gross receipts, it could "provid[e]

7

actual gross receipts as a result of the sublease activity . . . to the auditor."

By the time of the Board hearing, the only documentation Host presented was an unauthenticated chart entitled "Oakland Rent," purporting to show annual figures concerning rent paid by "DBE's" (presumably disadvantaged business enterprises) and "HII" (presumably Host) respectively. According to the chart, the "% of DBE rent to total" rent paid by Host was less than 20 percent for the years 2006 through 2009 but exceeded 20 percent beginning in 2010. The chart was unaccompanied by any evidence explaining how the numbers were derived, the precise meaning of each row of figures, or the supporting documentation. In fact, Host has now conceded that the chart "did not provide the relevant information with respect to the 20% Rule." At no time did Host place into the administrative record evidence of its total gross receipts for the relevant years, which would have been necessary for the Board to determine whether the 20 percent rule was applicable. Under these circumstances, we find no error in the Board's conclusion that Host failed to present evidence sufficient to establish that the 20 percent rule applies. (See *Akella*, *supra*, 61 Cal.App.5th at p. 814 [" 'Only if no reasonable person could reach the conclusion reached by the administrative agency, based on the entire record before it, will a court conclude that the agency's findings are not supported by substantial evidence. ' "].)

For the same reasons, we reject Host's new argument, raised for the first time in its reply brief on appeal, that if the Board had determined the applicability of the 20 percent rule using the City's estimates and Host's actual total gross receipts, it should have been

8

clear that the sublease receipts "never even came close to 20%" of the total. As noted, Host never provided the Board with evidence of its total gross receipts.

We likewise reject Host's motion to augment the record with a corrected chart and accompanying declaration that were never presented in the administrative proceedings. Judicial review of administrative action "is generally limited to the evidence in the record of the agency proceedings." (*Friends of the Old Trees v. Department of Forestry & Fire Protection* (1997) 52 Cal.App.4th 1383, 1390; see also Code Civ. Proc., § 1094.5, subd. (c).) Although additional evidence may be received if "the court finds that there is relevant evidence that, in the exercise of reasonable diligence, could not have been produced or that was improperly excluded at the hearing" (Code Civ. Proc., § 1094.5, subd. (e)), Host has failed to make such a showing. (See, e.g., *Eureka Citizens for Responsible Government v. City of Eureka* (2007) 147 Cal.App.4th 357, 367; see also *Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 578.)

**2.**

We likewise conclude that Host's statute of limitations argument lacks merit. Although Oakland Municipal Code section 5.04.240 imposes a three-year statute of limitations for actions to collect business taxes, the limitations period is tolled while the City "is unaware of the existence or ongoing activities of a business due to the taxpayer's failure to obtain a business license and/or failure to comply with annual reporting requirements."

Oakland Municipal Code section 5.04.090, subdivision (A) requires that each year, "[e]very person who is conducting usual and

9

customary business activities on January 1st of the current tax year shall . . . file with the Business Tax Section a written statement setting forth the then applicable factor or factors that constitute the measure of the [business] tax, together with such other information as shall be required by the business tax section to enable it to administer the provisions of this chapter." Host does not dispute that it failed to report its subleasing receipts to City tax authorities. As a result, City tax authorities were unaware of Host's subleasing activities until the 2015 audit.

Host contends that because the Port authorized Host to sublease its space, the City was constructively on notice of its subleasing activities. However, Host cites no authority for the proposition that it can violate the reporting requirements on which the City's tax authorities rely and, instead, shift the burden to the tax authorities to canvas other departments for information suggesting it owes further taxes. Under the Oakland Municipal Code, the taxpayer's compliance with annual reporting requirements is necessary to ensure City tax authorities are aware of the taxpayer's business activities. (Oakland Mun. Code, §§ 5.04.090, 5.04.240; cf. *Prang v. Los Angeles County Assessment Appeals Bd. No. 2* (2020) 54 Cal.App.5th 1, 22 [compliance with requirement that specific agency be provided notice ensured that the relevant agency had the information necessary to serve its "critical role in expertly evaluating whether that change in ownership warrants [tax] reassessment"].) Because City tax authorities were unaware of Host's subleasing receipts until 2015 due to Host's failure to report them, the Board correctly concluded that the statute of limitations does not reduce Host's liability.

10

## C.

Finally, Host contends that because it acted in good faith and genuinely believed it was complying with the applicable tax laws, fundamental fairness requires that the penalties and interest mandated by the Oakland Municipal Code be waived. We disagree.

First, Host provide no response to the City's point that the applicable provisions of the Oakland Municipal Code contain mandatory, not discretionary, language imposing penalties and interest for delinquent taxes. (See Oakland Mun. Code, § 5.04.190 [penalty for nonpayment of annual business tax "shall be" 25 percent if not paid by May 1]; *id.*, § 5.04.230 ["In addition to the penalties imposed, any person who fails to remit any business tax . . . shall pay interest"; *id.*, § 5.04.600, subd. (B) ["If an audit results in reclassification made necessary by earlier misclassification based upon incorrect and/or incomplete information supplied by a taxpayer to the Business Tax Section, penalties and interest pursuant to Sections 5.04.190 and 5.04.230 shall be retroactively assessed upon amounts underpaid from the date the correct taxes would have been due."].) Second, this plea for grace is a policy argument that should be directed to the City, not a legal argument for the courts to resolve.

## DISPOSITION

The judgment is affirmed.

_____
BURNS, J.


We concur:



_____
JACKSON, P.J.



_____
SIMONS, J.


A160692

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| HOST INTERNATIONAL, INC., et al., <br><br>     Petitioners and Appellants, <br><br> v. <br><br> CITY OF OAKLAND, et al. <br><br>     Respondents. | A160692 <br><br> (Alameda County Super. Ct. No. RG19010616) <br><br> **ORDER CERTIFYING OPINION FOR PUBLICATION** |

**THE COURT:**

    The opinion in the above-entitled matter, filed on October 4, 2021, was not certified for publication in the Official Reports.  On October 22, 2021, requests for publication were received from the City of Oakland and the League of California Cities pursuant to California Rules of Court, rule 8.1120(a).  We accepted the requests for publication for filing.

    For good causing appearing, this court grants the publication requests and orders the opinion certified for publication pursuant to California Rules of Court, rule 8.1105(b), (c).


Date: _____          _____ P. J.

Superior Court of Alameda County, The Hon. Frank Roesch.

Baker & Hostetler, Michael R. Matthias and Zoe M. Steinberg for Petitioners and Appellants.

Burke, Williams & Sorenson, Kevin D. Siegel and Deepa Sharma; Oakland City Attorney's Office, Barbara J. Parker, City Attorney, and Maria Bee, Chief Assistant City Attorney, for Respondents.